*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0187P (6th Cir.)
File Name: 02a0187p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*
                         No. 00-2424

DEMETRIUS CROWE,
    *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 99-81024—Paul D. Borman, District Judge.

Argued: May 3, 2002

Decided and Filed: May 29, 2002

Before: MERRITT, SUHRHEINRICH, and GILMAN,
Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Corbett E. O'Meara, Detroit, Michigan, for Appellant. Graham L. Teall, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Corbett E. O'Meara, Detroit, Michigan, for Appellant. Graham L. Teall, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge.    Demetrius Crowe was indicted for distributing heroin and carrying a firearm during a drug-trafficking crime.  After pleading not guilty, he waived his right to a trial by jury.  The district court found Crowe guilty on both counts following a one-day bench trial.  Crowe now appeals, arguing that his trial counsel was ineffective and that the evidence was insufficient to establish his guilt on the firearm count.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

The present case arises from Crowe's sale of heroin to an undercover agent with the Drug Enforcement Agency (DEA). This sale occurred on July 8, 1998 at a retail store in Dearborn, Michigan.  A confidential informant (CI) brokered the sale, with DEA Agent William Murphy serving as the undercover buyer.

The CI arranged to meet Crowe in the parking lot of the retail store, where Crowe was to sell one ounce of heroin to Agent Murphy for $5,000.  Murphy and the CI arrived at the parking lot together, with Crowe pulling into the lot a short time later.  After Crowe spoke privately with the CI, the CI returned to Murphy's car and explained that Crowe wanted the $5,000 before he would deliver the heroin.  Murphy refused.  Crowe then walked over to Murphy's car to discuss the sequence of the exchange with Murphy.  They eventually agreed that Murphy would show Crowe the $5,000 before the heroin was handed over.

Agent Murphy then telephoned another undercover DEA agent who was acting as his money source.  This agent soon arrived and delivered $5,000 in marked bills to Murphy.  At this point, Murphy, Crowe, and the CI all entered Murphy's car.  Murphy sat in the driver's seat, with Crowe seated in the

was a real handgun or only a toy. But evidence may sustain a guilty verdict even if it does not "remove every reasonable hypothesis except that of guilt." *Id*. at 225. Indeed, "[t]he mere possibility that the object seen by witnesses may have been a sophisticated toy or other facsimile does not necessarily create a reasonable doubt, nor is the government required to disprove that theoretical possibility." *United States v. Jones*, 16 F.3d 487, 491 (2d Cir. 1994) (rejecting the defendant's claim that his conviction for carrying a firearm during a drug-trafficking crime was not supported by sufficient evidence). Furthermore, Murphy testified that he did not believe that the object in Crowe's waistband was a toy, explaining that he had extensive experience and training in handling firearms and had never seen a toy gun "with a magazine locked around the handle."

The testimony of Agent Murphy, particularly when coupled with the recovery of the black semi-automatic handgun from Crowe's bedroom, provided the district court with a sufficient evidentiary basis for finding Crowe guilty of carrying a firearm during a drug-trafficking crime. We therefore find no merit in Crowe's sufficiency-of-the-evidence claim.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

front passenger seat and the CI, who was wearing a hidden tape-recording device, positioned in the back seat of the car. After Murphy showed Crowe the money, Crowe lifted his sweatshirt to retrieve the heroin from underneath his nylon pants. Murphy observed the butt end of a black semi-automatic handgun protruding from under the waistband of Crowe's pants. Crowe removed the heroin from the pocket of the shorts that he was wearing under his pants and handed it to Murphy, who gave Crowe the $5,000. With the sale complete, Crowe exited the car.

Agent Murphy immediately delivered the heroin to the undercover agent who had posed as his money source. He then returned to his car and warned the CI that "if your boy keeps carrying a handgun, he will get himself shot." Murphy also placed a radio call to inform the surveillance units in the area that Crowe had a handgun in his waistband.

Crowe was eventually arrested at his home on February 23, 1999. He told the arresting agents that he kept a firearm in his bedroom. After obtaining consent to search the home from Crowe's live-in girlfriend, the agents recovered a black .45-caliber handgun from underneath the mattress of Crowe's bed.

A federal grand jury in the Eastern District of Michigan subsequently indicted Crowe on one count of distributing heroin, in violation of 21 U.S.C. § 841(a), and one count of carrying a firearm during a drug-trafficking crime, in violation of 18 U.S.C. § 924(c). Crowe pled not guilty to both counts. He then waived his right to a jury trial, opting to have his case heard by the district judge.

The case proceeded to trial on March 13, 2001. Crowe declined to testify, and his counsel called no witnesses on his behalf. After a one-day trial, the district judge found Crowe guilty on both counts. Crowe was later sentenced to 27 months in prison on the drug-distribution count and 60 months in prison on the firearm count, with the sentences to be served consecutively. This timely appeal followed.

## II. ANALYSIS

### A.   Ineffective assistance of counsel

Crowe maintains that he was denied his right to the effective assistance of counsel, a right guaranteed by the Sixth Amendment to the United States Constitution. *Strickland v. Washington*, 466 U.S. 668, 684 (1984).   He specifically alleges that his counsel performed ineffectively by (1) failing to challenge the admissibility of the firearm recovered from his bedroom, (2) conducting an inadequate investigation into the circumstances surrounding the charged offenses, (3) giving Crowe insufficient advice regarding the implications of the proceedings, and (4) failing to present any defense on his behalf.   These alleged shortcomings, in Crowe's view, rendered his trial counsel's representation constitutionally ineffective under the standards set forth in *Strickland*.

This court, however, recognizes that, "[a]s a general rule, a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations." *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990). Ineffective-assistance-of-counsel claims are therefore typically pursued "in a proper post-conviction proceeding under 28 U.S.C. § 2255." *Id*.

In the present case, the record reflects neither the extent to which Crowe's counsel investigated the charges nor the nature of the advice that he gave to Crowe.   Furthermore, the record contains insufficient information for us to determine whether Crowe's counsel pursued a reasonable trial strategy in choosing to put the government to its proof rather than call any witnesses. *United States v. Earle*, No. 97-3171, 1998 WL 465350, at *3 (6th Cir. July 28, 1998) (unpublished table decision) ("The record is not adequate for review on direct appeal if facts about the impugned attorney's decision-making process and strategy must be determined to resolve the claims of inadequate representation.").   We therefore decline to

address the merits of Crowe's ineffective-assistance-of-counsel claim on direct appeal.

### B.   Sufficiency of the evidence

Crowe also argues that the government offered insufficient evidence to support his conviction for carrying a firearm during a drug-trafficking crime.   The government sought to establish Crowe's guilt on the firearm count primarily through the testimony of Agent Murphy, who recounted that he saw the butt end of a black semi-automatic handgun protruding from Crowe's waistband during the heroin sale.   Crowe contends, however, that Murphy was uncertain whether the object in Crowe's waistband was a real firearm or only a fake, so that his testimony was insufficient to prove beyond a reasonable doubt that Crowe carried a firearm during a drug-trafficking crime.

In reviewing a challenge to the sufficiency of the evidence supporting a criminal conviction, we determine whether, after viewing the evidence in the light most favorable to the government, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).   A defendant asserting such a challenge bears a "very heavy burden." *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986).

Turning to the present case, Agent Murphy testified that he was "sure" that the object in Crowe's waistband was a black semi-automatic handgun.   He explained that although he could see only a small portion of the object, he was able to identify that portion as the butt end of a black handgun. Murphy also testified that the butt end of the handgun had an ammunition magazine imbedded in it, which indicated that the handgun was semi-automatic.   This testimony was corroborated by the recovery of a black semi-automatic handgun from Crowe's bedroom at the time of his arrest.

Crowe makes much of the fact that Agent Murphy could not state for sure whether the object in Crowe's waistband