**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Deshawn SIMS, Defendant–Appellant.**

No. 00–2318.

United States Court of Appeals,
Sixth Circuit.

Sept. 6, 2002.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Before SILER and MOORE, Circuit Judges; and STAFFORD,* District Judge.

**OPINION**

MOORE, Circuit Judge.

Defendant–Appellant Deshawn Sims ("Sims") appeals his conviction and sentence for one count of distribution of a controlled substance and one count of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841, and two counts of aiding and abetting in the possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. Because none of his claims has merit, we **AFFIRM** Sims's conviction and sentence.

---

* The Honorable William H. Stafford, Jr., United States District Judge for the Northern District of Florida, sitting by designation.

1. As the district court observed, "Sims made this phone call to Thomas at the Atkinson Street house at about the same time that the DEA was executing the search warrant on the Hawthorne Street house." J.A. at 100. Although the record is too spotty to support anything other than a correlation between

**I**

In February 1997, based on information provided by cooperating individual Jeff Jones ("Jones"), Daniel Krause ("Krause"), a special agent with the Drug Enforcement Agency ("DEA") in Detroit, Michigan, began to investigate Sims for narcotics trafficking. On February 25, 1997, in a telephone conversation that Krause recorded, Jones arranged to meet Sims at 1469 Atkinson Street. At that meeting, Jones paid Sims $3,000 in prerecorded funds for a narcotics debt and received a kilogram of cocaine on consignment. On March 7, 1997, Jones arranged in another recorded telephone conversation to make a $3,000 payment to Sims; this meeting took place at 19972 Hawthorne Street.

Krause then obtained search warrants for the Atkinson and Hawthorne addresses and planned to arrest Sims. On March 11, 1997, in yet another recorded telephone conversation, Jones arranged to meet Sims at 19972 Hawthorne Street at around 4:30 p.m. At 4:45 p.m., having previously established surveillance at both houses, Krause and his team executed the search warrant at the Hawthorne address, but did not find any drugs, money, or Sims. At about this time, Sims called Sonya L. Thomas ("Thomas") at 1469 Atkinson Street and told her to "take that stuff out [of] the stove and put it in [a bag]." Joint Appendix ("J.A.") at 134.[1] Thomas placed the contents of the stove[2] in a backpack, left the house, and started to drive away. Informed that someone was leaving the Atkinson address, Krause directed agents to

these two events, Sims indicates in his brief that Thomas's "testimony established that [he] ... knew that federal authorities were searching locations associated with him, and that he was actively trying to hide incriminating evidence and contraband from discovery by the authorities." Appellant's Br. at 35–36.

2. Oral argument clarified that this stove was a heating stove in the living room.

stop Thomas. Thomas's backpack was later found to contain two kilograms of cocaine and at least one bag of crack.

On November 18, 1999, the United States ("Government") filed a superseding indictment against Sims, charging him with four counts: Count One, for distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1); Count Two, for possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1); and Counts Three and Four, for aiding and abetting in the possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Counts Three and Four charged Thomas and Sims with "aid[ing] and abet[ting] each other." J.A. at 25.

On February 25, 2000, Thomas pleaded guilty to use of a communication facility in furtherance of a controlled substance felony, in violation of 21 U.S.C. § 843(b).[3] Sims pleaded not guilty and proceeded to a jury trial, where he was convicted of all charges. On June 5, 2000, Sims filed (1) a motion for a judgment of acquittal on Counts Three and Four and (2) a motion to vacate his conviction and for a new trial on Counts One and Two, which the district court denied.

On October 11, 2000, the district court sentenced Sims to 262 months' imprisonment on each count, to be served concurrently, an eight-year term of supervised release on Counts One, Two, and Three, and a concurrent five-year term of supervised release on Count Four; it also ordered a special assessment of $100 on each count.[4] This timely appeal followed.

## II

### A

Sims first challenges the district court's denial of his motion for a judgment of acquittal on Counts Three and Four, arguing that the evidence was insufficient to prove Thomas's intent to distribute the drugs that she carried out of 1469 Atkinson Street. We review such a denial de novo, asking "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir.2002) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Under *Jackson*, we "view both circumstantial and direct evidence in a light most favorable to the prosecution." *Id.* We accordingly will "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir.), *cert. denied*, —— U.S. ——, 122 S.Ct. 306, 151 L.Ed.2d 228 (2001).

■ Counts Three and Four charged Thomas and Sims with "knowingly, intentionally aid[ing] and abet[ting] each other in knowingly and intentionally, and unlawfully, possessing with the intent to distribute a controlled substance." J.A. at 25–26. Because Thomas cooperated with the Government, the district court read Counts Three and Four as charging Sims with aiding and abetting Thomas, and so instructed the jury. Therefore, the primary question before us is whether Thomas's conduct violated 21 U.S.C. § 841(a)(1). *See Shuttlesworth v. City of Birmingham*, 373 U.S. 262, 265, 83 S.Ct. 1130, 10 L.Ed.2d 335 (1963) ("It is generally recognized that there can be no conviction for aiding and abetting someone to do an innocent act."); *United States v. Hoffa*, 349 F.2d 20, 40 (6th Cir.1965), *aff'd*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).

---

3. Counts Three and Four, as they related to Thomas, were later dismissed.

4. On November 17, 2000, the district court filed an amended judgment.

If so, then Sims would be liable under 18 U.S.C. § 2. *See Standefer v. United States,* 447 U.S. 10, 20, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980) ("With the enactment of [§ 2], all participants in conduct violating a federal criminal statute are 'principals.' As such, they are punishable for their criminal conduct; the fate of other participants is irrelevant.").[5]

At trial, Thomas testified that Sims called her on the early evening of March 11, 1997, at 1469 Atkinson Street and instructed her to remove "[s]ome stuff" from the stove and put it in a particular bag. J.A. at 413. This call made her panic, especially because Sims had not given any "instruction what to do once [she] got that stuff in the bag." J.A. at 477. Although

Thomas claimed during her testimony that she did not know what the "stuff" was until the police told her that it was cocaine and crack, Sims appears to concede on appeal that Thomas knowingly possessed the drugs. He focuses instead on the alleged lack of evidence concerning Thomas's intent to distribute, particularly the district court's statement at trial that "nowhere is there any evidence in this record — in this case — of possession with the intent to distribute on her part. All that she did was to take this — she called it 'stuff' out of the oven, brought it down to the car, and she was apprehended." J.A. at 499.[6]

Sims maintains that the district court's statement was tantamount to a finding

---

**5.** It seems to us that much of the confusion in this case could have been prevented if the prosecutor had simply asked the district court to instruct the jury on finding Sims guilty as a principal as well as an aider and abettor of Thomas on Counts Three and Four. The record indicates that the district court was troubled by the conceptual anomaly of Sims's conviction for aiding and abetting when the evidence at face value did not support Thomas's guilt as a principal. Indeed, Sims was initially indicted on possession with intent to distribute the cocaine and crack found in Thomas's backpack. The superseding indictment dismissed this count and charged Sims and Thomas with "aid[ing] and abet[ting] each other." J.A. at 25. Although we think that it would have been advisable to charge Sims and Thomas in separate counts, we can discern how the new charge still left open the possibility that Sims was guilty as a principal. The district court, however, reached a contrary conclusion:

> [T]he indictment says that on or about March 11th, in the Eastern District of Michigan, Sonya Thomas and Deshawn Sims did knowingly and intentionally and abet – aid and abet each other in knowingly and intentionally and unlawfully possessing with the intent to distribute a controlled substance.
> Now, granted that Sonya Thomas, who's no longer an indictee in [Count 3] or Count 4 because of the Superseding Information

that was filed against her and then her plea of guilty to the Superseding Information.
> The only way that Count 3 and Count 4 can be read is to say that Deshawn Sims did knowingly aid and abet Sonya Thomas in knowingly and intentionally and unlawfully possessing with the intent to distribute a controlled substance.

J.A. at 498–99. After contending that the district court had "start[ed] out on … an incorrect premise" and stating that the charges of "aid[ing] and abett[ing] each other … mean[t] either [Thomas or Sims] could be the principal," the prosecutor argued that Counts Three and Four as they related to Sims should stand because the case was one of "classic aiding and abetting." J.A. at 503.

The record before us suggests that the district court's interpretation of Counts Three and Four, which was pronounced while hearing Sims's motion for a judgment of acquittal on those counts, was the one that prevailed at trial, even when it came time to discuss the jury instructions. We recount these facts in detail to point out that the jury could have been instructed on finding Sims guilty as a principal.

**6.** We also note that the prosecutor stated the following at Thomas's sentencing: "We had no evidence that [Thomas] was involved in the drug dealing activity of Deshawn Sims, during the investigation that led up to the arrest, and the day that he called her and told her to

that Thomas had not possessed the cocaine and crack with any intent to distribute. After reviewing the record, however, we conclude that the statement was not a binding finding. The district court expressed doubt about Thomas's intent to distribute while hearing Sims's motion for a judgment of acquittal. In that context, the district court questioned the extent to which intent to distribute could be inferred from possession of a large quantity. After asking the prosecutor for a case on point, the district court resolved "to simply take some more time to decipher this [issue]," J.A. at 521, and to send the case to the jury for a verdict, which could be revisited under Federal Rule of Criminal Procedure 29 and reviewed on appeal. We believe that the district court's decision to obtain a jury verdict militates against construing the district judge's statement as an actual finding about the sufficiency of the evidence with respect to Thomas's intent to distribute.[7]

Viewing the evidence in the light most favorable to the prosecution, it appears from the guilty verdict that the jury discredited Thomas's testimony and inferred the requisite intent to distribute from her attempt to remove the cocaine and crack from the Atkinson address, which presumably would have been followed by delivery of the drugs to Sims, had Thomas not been apprehended. This inference was available to the jury, as Thomas's instructions came from Sims. Cf. *United States v. Jackson*, 55 F.3d 1219, 1226 (6th Cir.) (holding that "intent to distribute was shown through evidence that [a defendant] did actually 'distribute' the heroin by giving the package to [his co-defendant]" and emphasizing that "[p]roof of intent to *sell* is not required"), *cert. denied*, 516 U.S. 926, 116 S.Ct. 328, 133 L.Ed.2d 229 (1995).[8] Furthermore, we have held that "[a]n intent to distribute [ ] cocaine may be inferred from the large quantity and purity of the cocaine," such as five kilograms of eighty-three percent pure cocaine. *Salgado*, 250 F.3d at 446–47; *see also Jackson*, 55 F.3d at 1221, 1226 (understanding a large quantity as "too large for personal use alone," in a case involving fifty to

remove the drugs from the house is the only involvement that we knew of." J.A. at 637.

7. The district court ultimately inferred Thomas's intent to distribute from the fact that she pleaded guilty to a "drug trafficking crime." J.A. at 105. Thomas was indicted on two drug trafficking charges – specifically, violations of 21 U.S.C. § 841(a)(1). *See United States v. Nabors*, 901 F.2d 1351, 1356 (6th Cir.), *cert. denied*, 498 U.S. 871, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990). Thomas's guilty plea, however, appears not to have specified which "controlled substance felony" was furthered by her use of a communication facility. J.A. at 108. Sims now argues that "the [district] court's conclusion is illogical and based upon legally impossible reasoning." Appellant's Br. at 26.

Although "drug trafficking" certainly implies distribution or at least the intent to distribute, "controlled substance felony" does not necessarily do so. *See, e.g.,* 21 U.S.C. § 843(a)(3) and (d)(1) (making it a felony "for any person knowingly or intentionally to acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge"). Therefore, despite the legal maneuvering that resulted in the Government's giving Thomas "the benefit of the least charge [it] could have her plead to and still plead to a felony and cooperate," J.A. at 510, we will not read Thomas's guilty plea to imply anything about her intent to distribute.

8. We have also defined "distribution" as including "acts perpetrated in furtherance of a transfer or sale, such as arranging or supervising the delivery." *United States v. Colon*, 268 F.3d 367, 377 (6th Cir.2001). It is thus arguable that the jury inferred Thomas's intent to distribute from her attempt to further the future transfer or sale of the cocaine and crack kept in the stove at the Atkinson address.

eighty grams of heroin). Thomas possessed at least two kilograms of cocaine and 300 grams of crack. Therefore, we hold that the evidence was sufficient to support Sims's convictions for aiding and abetting Thomas.

**B**

Sims argues that prejudicial spillover from the insufficient evidence for Counts Three and Four subjected him to retroactive misjoinder. "Retroactive misjoinder arises when joinder of multiple counts was proper initially, but later developments ... render the initial joinder improper." *United States v. Aldrich,* 169 F.3d 526, 528 (8th Cir.1999) (quotation omitted). Because we have affirmed Sims's aiding and abetting convictions, this claim is moot.

**C**

Sims claims that the district court erred in admitting three audiotapes that allegedly recorded his voice in 1997.[9] We review for an abuse of discretion a district court's admission of evidence. *Humphrey,* 279 F.3d at 376; *see also Trepel v. Roadway Express, Inc.,* 194 F.3d 708, 716–17 (6th Cir.1999) (citing *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 141, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) for the proposition that all evidentiary decisions are reviewed for an abuse of discretion). "The scope of this discretion has been broadly construed, and the trial court's

actions are to be sustained unless manifestly erroneous." *Humphrey,* 279 F.3d at 376 (quotation omitted). At trial, Krause identified the voice as that of Sims on the basis of "the flow of the conversation on the tapes" and his general conversation with Sims when the Government processed Sims in 1999. J.A. at 199.[10] Krause testified that he talked with Sims for ten to fifteen of the forty-five minutes that processing a defendant usually takes. Although Krause did not listen to the tapes again until February 2000, he remembered Sims's voice because it was "a distinct type voice." J.A. at 237.

Under Federal Rule of Evidence 901(b)(5), voices may be identified "by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." Because Krause identified Sims's voice based upon a conversation with Sims, we hold that the admission of the audiotapes was not an abuse of the district court's discretion. *Cf. United States v. Cooper,* 868 F.2d 1505, 1519 (6th Cir.) (affirming the admission of voice identification testimony, where the witness spoke with the defendant "for a total of approximately 30 seconds ... [or] 'maybe longer,'" in addition to listening to tape recordings and overhearing the defendant's conversations), *cert. denied,* 490 U.S. 1094, 109 S.Ct. 2440, 104 L.Ed.2d 996 (1989). Sims basically believes that Krause's testimony was "inherently incredible," Reply Br. at 15, but credibility deter-

---

**9.** Sims rather briefly asserts that the district court abused its discretion in allowing the jury to use "rough transcripts of the[] tapes." Appellant's Br. at 43. He makes no further argument. Because the district court read the transcripts against the tapes and "found the transcripts to be accurate and trustworthy," J.A. at 101; *see United States v. Robinson,* 707 F.2d 872, 876 (6th Cir.1983), and also gave the required cautionary instruction to the jury, *see United States v. Segines,* 17 F.3d 847, 854 (6th Cir.1994), *cert. denied,* 519

U.S. 908, 117 S.Ct. 269, 136 L.Ed.2d 192 (1996), we hold that the district court did not err in allowing the jury to use the transcripts.

**10.** Because the tapes at issue were admitted into evidence during Krause's testimony, the later testimony of other Government witnesses is not relevant to determining whether the district court abused its discretion in admitting the tapes when it did.

minations are beyond the scope of our review.

### D

 Sims claims that the district court deprived him of a fair trial by making "disparaging remarks to defense counsel in the presence of the jury," which "when weighed against the lack of [admonitions] towards the government, gave the jury the impression that the judge thought the defendant's case was of little substance and somewhat of a sham." Reply Br. at 18–19. We review for harmless error objections to judicial conduct that were properly preserved and for plain error those that were not. *United States v. Owens*, 159 F.3d 221, 227 (6th Cir.1998), *cert. denied*, 528 U.S. 817, 120 S.Ct. 56, 145 L.Ed.2d 49 (1999). Because defense counsel did not object to the district court's remarks at trial and Sims does not "argue that to do so would have exacerbated the situation," we review for plain error. *United States v. Tipton*, 11 F.3d 602, 611 (6th Cir.1993), *cert. denied*, 512 U.S. 1212, 114 S.Ct. 2692, 129 L.Ed.2d 823 (1994). "The plain error doctrine mandates reversal only in exceptional circumstances and only where the error is so plain that the trial judge and prosecutor were derelict in countenancing it." *Id.* (quotation omitted).

In *United States v. Hickman*, 592 F.2d 931 (6th Cir.1979), where we reversed and remanded for a new trial, the district court essentially became "a surrogate prosecutor," making nearly constant interruptions and actually taking over the cross-examination of defense witnesses in the course of a one-day trial. *Id.* at 936. The district court also raised and sustained objections sua sponte. *Id.* at 934. Finding this conduct troubling, we specifically wondered

why the district court did not "wait for an objection, or . . . call counsel up before him out of the hearing of the jury and admonish them if they were misbehaving or bungling an examination of a witness." *Id.*

In this case, the vast majority of the comments that Sims describes as disparaging were made during cross-examination, when the district court felt that defense counsel was arguing with the Government's witnesses. For example, roughly half of the district court's allegedly biased remarks came during the cross-examination of Krause. In an early instance, the prosecutor objected after defense counsel asked Krause the same question twice. Defense counsel asked the question again, and the district court warned him not to argue with the witness. When defense counsel persisted in following the same line of questioning, the district court instructed the jury to leave because he "want[ed] to have a little chat with [defense counsel]." J.A. at 218. The district court then told defense counsel that he would have "as much leeway as [he needed] to civilly cross-examine a witness," but that he should not shout or be argumentative. J.A. at 218–19.[11] So advised, defense counsel continued to repeat questions and to ignore the district court's rulings as he cross-examined Krause, which prompted the district court to ask if defense counsel was "trying to irritate me." J.A. at 259. The cross-examination of Hawes played out in a similar vein.

We have held that district courts have "wide discretionary control" when limiting cross-examination. *United States v. Slone*, 833 F.2d 595, 600–01 (6th Cir.1987) ("[S]ince the extent of cross-examination is within the trial judge's sound discretion,

---

**11.** We think that this discussion, which took place when the jury was not in the courtroom, sufficiently addresses our concern in *Hickman* about district courts that admonish counsel in front of the jury.

the judge may reasonably determine when a subject is exhausted."). Preventing defense counsel "from belaboring his point" does not constitute an abuse of discretion. *Id.* at 601. Therefore, we hold that the district court did not deprive Sims of a fair trial.

Sims's other charges of judicial bias do not suggest the level of partiality or hostility that would be required for reversal. *Cf. Liteky v. United States,* 510 U.S. 540, 555–56, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (stating, in a recusal case under 28 U.S.C. § 455(a), that bias or partiality would not be established by "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display"). Where appropriate, the district court sustained defense counsel's objections and overruled the prosecutor's objections. Indeed, at one point the district court chastised the prosecutor for "a lack of preparation" on the consequences of Thomas's plea agreement. J.A. at 524.

### E

Sims's base offense level was initially calculated at 34 (for at least 3000 KG but less than 10,000 KG of marijuana equivalency), and the district court made no adjustments. With a criminal history category of IV, Sims's sentencing range was 210 to 262 months. The district court sentenced him to 262 months. Sims now argues that he was sentenced in violation of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), where the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490.

■■■ Sims was indicted on and convicted of offenses involving specific quantities of cocaine and crack, which an expert witness confirmed. In instructing the jury, however, the district court stated that the evidence "need not establish that the amount or quantity was exactly as alleged in the indictment, but only that a measurable amount of cocaine was, in fact, the subject of the indictment." J.A. at 547–48. Because Sims did not raise an objection in the district court,[12] we review for plain error. *United States v. Harris,* 293 F.3d 970, (6th Cir.2002).

■■■ No error occurred in this case. The statutory maximum for offenses involving an unspecified quantity of cocaine is 360 months for "any person [who] commits such a violation after a prior conviction for a felony drug offense has become final." 21 U.S.C. § 841(b)(1)(C). Because Sims was convicted in 1989 for delivery of cocaine under fifty grams, which is a felo-

---

12. At sentencing, defense counsel took issue with the fact that the presentence report held Sims accountable for "354.7 grams of cocaine base." J.A. at 656, 677. His objection was to type rather than quantity: "[M]y position is that, unless there is something I'm missing here, I believe that the — the chemist identified both items as containing cocaine hydrochloride," or cocaine. J.A. at 659–60. After the prosecutor quoted testimony from the chemist distinguishing the two types of cocaine that had been admitted into evidence and assured defense counsel that "[t]he chem-

ist testified as to the chemical analysis that he performed on each of those exhibits," J.A. at 664, defense counsel withdrew his objection.

Sims argues that defense counsel's failure to object on *Apprendi* grounds denied him the right to effective assistance of counsel. However, because such a claim is reviewed more appropriately in a post-conviction proceeding under 28 U.S.C. § 2255 than on direct appeal, we will not address the merits of Sims's claim at this time. *See United States v. Crowe,* 291 F.3d 884, 886 (6th Cir.2002).

ny, *see* MICH. COMP. LAWS § 333.7401(2)(a)(iv) (2001 & Supp.2002), his sentence of 262 months' imprisonment was not in violation of *Apprendi.*

### F

Finally, Sims argues that the totality of errors denied him a fair trial. This claim lacks merit and need not be addressed.

### CONCLUSION

For the foregoing reasons, we **AFFIRM** Sims's conviction and sentence.

STAFFORD, District Judge, specially concurring.

I agree with the result reached by the majority and would affirm. I do not, however, concur in footnote 5.