**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Aubrey Lynn EADY, Defendant–Appellant.**

No. 03–1204.

United States Court of Appeals, Sixth Circuit.

May 18, 2004.

Timothy P. VerHey, U.S. Attorney's Office for the Western District of Michigan, Grand Rapids, MI, for Plaintiff-Appellee.

David A. Merchant, II, Merchant & Maddaloni, Lansing, MI, for Defendant-Appellant.

Before SUHRHEINRICH, GIBBONS, and SUTTON, Circuit Judges.

GIBBONS, Circuit Judge.

Defendant-appellant Aubrey Lynn Eady was convicted by a jury of committing bank robbery in violation of 18 U.S.C. § 2113. During trial, the district court denied a motion by Eady requesting that the court either grant immunity to two witnesses whose testimony Eady claims would have been exculpatory to him or order the government to do so. Also during trial, the government's expert witness displayed to the jury a chart that was never admitted into evidence. On appeal, Eady claims that the district court should have granted or ordered the government to grant immunity to the two potential witnesses, that the court erred in permitting the government to display the chart, and that his trial counsel provided ineffective assistance by failing to object to the use of the chart. For the following reasons, we affirm the judgment of the district court.

**I.**

On December 3, 1999, someone robbed the Southern Michigan Bank and Trust branch located at 1425 Capital Avenue in Battle Creek. Michigan. The robber entered the bank and presented a teller an envelope in which there was a note that read. "This is a robbery. Hand me 100, 50, and 20. Don't move. Act claim." After reading the note, the teller gave the robber approximately $1,200 from the bank's drawers. The robber then exited the bank, leaving the envelope and note behind.

The Federal Bureau of Investigation ("FBI") investigated the crime and considered Mark Elliot Johnson—who was believed to have robbed other banks—to be a suspect. In the process of investigating Johnson, the FBI questioned Denise Cross and Brian Lindsey, who were acquaintances of Johnson. Apparently, Cross told the FBI that she may have assisted Johnson in committing another bank robbery, that Johnson admitted to her that he committed other bank robberies, and that she accepted from Johnson proceeds from one of those robberies and used them to purchase cocaine. Lindsey purportedly gave investigators similar information and also stated that Johnson once attempted to recruit him to rob the Southern Michigan Bank and Trust branch on Capital Avenue in Battle Creek. Neither indicated that Johnson actually robbed that branch on December 3, 1999, or planned to do so.

After further investigation, the FBI concluded that Eady, not Johnson, committed the robbery in question. On May 16, 2002, a grand jury returned an indictment

against Eady charging him with robbing the bank on December 3, 1999, in violation of 18 U.S.C. § 2113. Eady pleaded not guilty, and the case proceeded to trial in the United States District Court for the Western District of Michigan. The government informed Eady's trial counsel of the statements made by Lindsey and Cross to the FBI. As a result. Eady's trial counsel wanted to call them as witnesses in Eady's defense, but the government notified the court at the outset of trial that doing so might lead them to implicate themselves in other crimes. In an effort to remedy this dilemma. Eady's counsel requested that the trial court direct the government to grant the two potential witnesses immunity for their testimony or, in the alternative, unilaterally grant them immunity. The court denied the request, noting that it had no authority to grant witnesses immunity.

Under subpoena by the defendant, Lindsey, who was represented by court-appointed counsel, took the stand at trial but indicated that he intended to invoke his Fifth Amendment right against self-incrimination. Eady's trial counsel again moved the court to grant—or order the prosecution to grant—Lindsey immunity for his testimony, and the court again denied the motion, stating that it lacked the authority to sustain it. Consequently, Lindsey provided no evidentiary testimony and was excused.[1]

Numerous other witnesses who testified at trial implicated Eady in the bank robbery. The bank teller who was handed the note identified Eady as the robber. Another teller who witnessed the robbery also identified Eady as the culprit. A customer who witnessed a suspicious man pacing outside the bank immediately prior to the robbery described that man to a police sketch artist, who developed a sketch. The customer later identified the man as Eady from a photograph lineup and also identified Eady as that man in court. Finally, an acquaintance of Eady identified him as the person in the sketch.

The prosecution also presented an expert witness, who testified that fingerprints on the envelope left behind by the robber matched those of Eady.[2] In the process of explaining this conclusion to the jury, the expert used a chart labeled Government's Proposed Exhibit 21. One side of the chart displayed a fingerprint the parties agreed was Eady's, while the other side displayed a fingerprint obtained from Exhibit 2—the envelope left behind by the robber, which was admitted into evidence. Using the chart, the expert explained why the two fingerprints were the same. Eady's trial counsel did not object to the expert's use of the chart. The chart, however, was never entered into evidence.

On September 9, 2002, the jury found Eady guilty of violating 18 U.S.C. § 2113. On January 6, 2003, the district court entered judgment against Eady and sentenced him to a prison term of 210 months, three years supervised release, and a total of $3,880 in assessments, fines, and restitution. Eady filed a timely notice of appeal on February 14, 2003.

## II.

■ Eady first argues that the district court erred in failing to grant or order the government to grant immunity to Lindsey and Cross for their potential testimony. Because this issue presents a question of law concerning the scope of a district court's authority, we review the issue *de novo. See United States v. Ross,* 245 F.3d 577, 585 (6th Cir.2001).

---

1. The defense also subpoenaed Cross, but she never appeared at trial.

2. The expert also testified that none of the fingerprints on the envelope matched a known fingerprint of Johnson.

As a general matter, "a district court is without authority to either grant immunity to a witness who asserts his Fifth Amendment privilege against self incrimination, or to force the government to do so." *United States v. Talley,* 164 F.3d 989, 997 (6th Cir.1999). Exceptions to this rule may potentially exist in two narrow circumstances. *Id.; United States v. Emuegbunam,* 268 F.3d 377, 401 (6th Cir.2001). We have described the first circumstance as follows: "[I]n certain limited situations, the government's selective grant of immunity to its own witnesses, while denying immunity to the defendant's witnesses, may deprive the defense of a fair trial, and in some cases require a judicially compelled immunity grant." *Talley,* 164 F.3d at 997. The second possible circumstance in which a district court may be warranted in granting immunity or directing the government to grant immunity is when it is necessary "to remedy prosecutorial misconduct." *Id.* at 998. A defendant seeking to show that a district court erred in failing to grant immunity under this circumstance would have to show that "the prosecution has deliberately distorted the judicial fact-finding process." *Emuegbunam,* 268 F.3d at 401.

We have never expressly decided whether an exception is available in either of these circumstances, nor need we do so here, Eady's case fits neither exception. Eady concedes that the prosecution in this case did not grant immunity to any of its witnesses. Hence, the first possible exception does not apply. He also conceded at oral argument that the government engaged in no misconduct in this case, making the second exception inapplicable as well. In sum, the district court had no authority to grant or to direct the government to grant immunity to either Lindsey or Cross for their testimony, and it did not err in refusing to do so.

■ Eady next asserts that the district court erred in allowing the government's expert to use the fingerprint chart while explaining to the jury his conclusion that Eady's fingerprints matched those on the envelope left behind by the robber. Because Eady's trial counsel did not object to the use of the chart at trial, we review the district court's decision to allow its use for plain error. *United States v. Fortson,* 194 F.3d 730, 736 (6th Cir.1999). A defendant can establish plain error only by demonstrating that "(1) an error occurred; (2) the error was obvious or clear; (3) the error affected his substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Cline,* 362 F.3d 343, 348 (6th Cir.2004).

Eady's evidentiary claim fails because no error occurred here. To the extent that Eady argues that it was improper to display the chart because it showed a fingerprint not entered into evidence, the argument is foreclosed by the fact that Eady stipulated that the fingerprint need not be entered into evidence. Eady also suggests that the chart was unfairly prejudicial under Fed.R.Evid. 403. However, the only prejudice to which he can point is the fact that the chart contained evidence detrimental to his case, which is not sufficient to constitute unfair prejudice. *United States v. Weinstock,* 153 F.3d 272, 278 (6th Cir.1998) ("If all evidence adverse to a defendant was subject to exclusion under Rule 403, then no government evidence would ever be deemed admissible. The test under Rule 403 is not whether the evidence is detrimental, but whether it is so unfairly prejudicial as to substantially outweigh its probative value.").

Finally, Eady contends that his trial counsel deprived him of his constitutional right to effective assistance of counsel by failing to object to the use of the chart. Ordinarily, this court will not evaluate an

444

ineffective assistance of counsel claim on direct appeal because the record is seldom sufficiently developed at that stage of the proceedings to assess the merits of the claim. *See Massaro v. United States*, 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003); *United States v. Crowe*, 291 F.3d 884, 886 (6th Cir.2002). However, the claim may be considered on direct appeal if it can resolved upon the facts within the record. *United States v. Angel*, 355 F.3d 462, 469 (6th Cir.2004). Here, the record is fully developed with respect to the use of the chart, and our conclusion that no error occurred at trial precludes a determination that counsel was constitutionally ineffective. Therefore, we reject Eady's ineffective assistance claim.

### III.

For the foregoing reasons, we affirm the judgment of the district court.