NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0412n.06

No. 21-3957

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Oct 18, 2022
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| JONATHAN DONNELL, | ) | DISTRICT OF OHIO |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |
| | ) | |

Before: MOORE, THAPAR, and LARSEN, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** A jury found Jonathan Donnell guilty on one count of aiding and abetting interference with commerce by robbery and one count of aiding and abetting another in using or carrying, and brandishing a firearm during and in relation to a crime of violence. The district court sentenced Donnell to a total of 162 months' imprisonment. On appeal, Donnell argues that (1) the evidence presented at trial was insufficient to sustain a conviction on either count; (2) the district court erred in failing to admit his jail calls in their entirety, in violation of the rule of completeness; (3) the district court violated his right to a jury drawn from a fair cross section of the community; and (4) his sentence is substantively unreasonable. For the reasons that follow, we **AFFIRM**.

## I. BACKGROUND

At approximately 9:52 PM on May 5, 2019, the Elyria Police Department responded to a report of an armed robbery at a Marathon gas station. R. 54 (Trial Tr. at 157–58) (Page ID #1063–

64).  While setting up a perimeter around the gas station, an officer stopped a man, later identified as Joseph Geiger, to ask what he was doing in the area.  *Id.* at 179–82 (Page ID #1085–88).  The officer had no reason to detain Geiger at that time, and let him leave.  *Id.* at 182 (Page ID #1088).  Later, upon seeing video surveillance of the robbery, the officer recognized Geiger as one of the suspects.  *Id.* at 183–84 (Page ID #1089–90).  Another officer found Geiger in the vicinity of the gas station shortly thereafter and transported him to jail.  *Id.* at 203–04 (Page ID #1109–10).

In interviews with law enforcement, Geiger eventually stated that he was coming from his cousin Jonathan Donnell's house when he was stopped by police.  R. 55 (Trial Tr. at 249–50, 389) (Page ID #1155–56, 1295).  Law enforcement then obtained warrants for both Geiger's and Donnell's cellphones.  *Id.* at 390, 400 (Page ID #1296, 1306).  Data obtained from the cellphones showed Donnell and Geiger exchanged numerous phone calls and text messages on the night of the robbery, including several messages from Geiger to Donnell after Geiger had been detained by the Elyria Police Department, giving Donnell a "play-by-play" of what was going on.  *Id.* at 421–33 (Page ID #1327–39).  Donnell's web browser history showed that he had previously searched for terms including:  "Robbery: What is the best way to rob a store"; "How to rob a bank as told by an actual bank robber"; "How to break glass silently"; and "Robbery.  How to best rob a store?"  *Id.* at 434–41 (Page ID #1340–47).

Meanwhile, law enforcement identified Michael Ward as a likely contributor to DNA found on a firearm recovered from the vicinity of the gas station.  *Id.* at 403, 450 (Page ID #1309, 1356).  Donnell and Ward knew each other because Donnell was Ward's sister's long-term boyfriend and the father of some of her children.  *Id.* at 248 (Page ID #1154); R. 36 (PSR ¶ 68) (Page ID #802).  Donnell and Ward's sister were living together at the time of the offenses.  R. 55

(Trial Tr. at 271) (Page ID #1177). Ward and Geiger were arrested, and Ward eventually cooperated with law enforcement, admitting his role in the robbery and inculpating Geiger and Donnell. *Id.* at 404–06 (Page ID #1310–12). Donnell was subsequently indicted on one count of aiding and abetting interference with commerce by robbery, in violation of 18 U.S.C. §§ 2, 1951, and one count of aiding and abetting another to use or carry, and brandish a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 2, 924(c)(1)(A)(ii). R. 1 (Indictment) (Page ID #1–2).

At trial, Ward testified that Donnell drove him and Geiger to the gas station, and that the plan was for Donnell to act as the getaway driver. R. 55 (Trial Tr. at 255–57) (Page ID #1161–63). The three men planned the robbery at Donnell's home, where they obtained the guns, zip ties, and masks used in the robbery. *Id.* at 257, 271, 284 (Page ID #1163, 1177, 1190). Geiger and Ward were wearing the masks and had the guns as Donnell drove them to the gas station. *Id.* at 258 (Page ID #1164). The government introduced recorded conversations between Donnell and Ward's wife as well as recorded phone calls from Donnell to his mother, in which Donnell admitted to his participation in the robbery, including his roles as both the driver and supplier of firearms. *Id.* at 454–64 (Page ID #1360–70). Donnell's cellphone records and browser history were also introduced. *Id.* at 421–41 (Page ID #1327–47). The jury found Donnell guilty on both counts. R. 32 (Verdict) (Page ID #754–55).

The district court subsequently sentenced Donnell to seventy-eight months' imprisonment on count one and eighty-four months' imprisonment on count two, to run consecutively. R. 44 (J. at 2) (Page ID #839). Before imposing the sentence, the district court reviewed the nature and circumstances of the offenses and Donnell's history and characteristics and discussed the necessity

3

of the sentence in order to protect the public and provide deterrence. R. 57 (Sent'g Hr'g Tr. at 11–18) (Page ID #1498–505). The district court found that the average national sentence for offenses involving robbery when the convicted person had the same criminal history category as Donnell was eighty-eight months' imprisonment, not including any additional sentence for brandishing a firearm. *Id.* at 17 (Page ID #1504). The district court ultimately decided to give Donnell a sentence at the top of the guidelines range on count one due to his criminal history and his level of involvement in the offenses. *Id.* at 16 (Page ID #1503). The district court was bound by 18 U.S.C. § 924(c)(1)(A)(ii) to impose a consecutive mandatory minimum sentence on count two. *Id.* at 17 (Page ID #1504). Donnell now timely appeals. R. 46 (Notice of Appeal) (Page ID #849).

## II. MOTION FOR JUDGMENT OF ACQUITTAL

### A. Standard of Review

Donnell first argues that the district court erred in denying his motion for judgment of acquittal on the basis that there was insufficient evidence to support a conviction. We review de novo challenges to the sufficiency of evidence. *United States v. Ray*, 803 F.3d 244, 262 (6th Cir. 2015). If, however, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," we must uphold the jury's verdict. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In analyzing sufficiency of the evidence issues, "we do not weigh the evidence, consider the credibility of witnesses or substitute our judgment for that of the jury." *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). A conviction can be sustained on circumstantial evidence alone, "and such evidence need not 'remove every reasonable hypothesis except that of guilt.'" *United States v. Ellzey*, 874 F.2d 324, 328 (6th Cir. 1989) (quoting *United States v. Stone*, 748 F.2d 361,

4

363 (6th Cir. 1984)). Likewise, "the uncorroborated testimony of an accomplice may support a conviction under federal law." *United States v. Gallo*, 763 F.2d 1504, 1518 (6th Cir. 1985). Donnell has not surmounted this heavy burden.

**B. Aiding and Abetting Interference with Commerce by Robbery**

A jury found Donnell guilty of aiding and abetting the interference with commerce by robbery in violation of the Hobbs Act, 18 U.S.C. §§ 2, 1951(a). R. 32 (Verdict at 1) (Page ID #754). Such a conviction requires proof beyond a reasonable doubt that the defendant "(1) t[ook] an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." *Rosemond v. United States*, 572 U.S. 65, 71 (2014). Donnell takes issue with the second prong, arguing that there was insufficient evidence that he intended to facilitate Ward and Geiger's robbery of the gas station. We have, however, held that "[a]ctive participation in the planning phase of an armed robbery constitutes intent to bring about the offense." *United States v. Gooch*, 850 F.3d 285, 288 (6th Cir. 2017). This forecloses Donnell's arguments.

There is sufficient evidence of Donnell's involvement in the planning and preparation of the robbery to support his conviction pursuant to the Hobbs Act. One of Donnell's co-defendants, Ward, testified that Donnell drove Ward and Geiger to the gas station, and that the plan was for Donnell to act as the getaway driver. R. 55 (Trial Tr. at 255–57) (Page ID #1161–63). The three men planned the robbery at Donnell's home, where they obtained the two guns, zip ties, and masks that were used in the robbery. *Id.* at 257, 271, 284 (Page ID #1163, 1177, 1190). And Geiger and Ward were wearing the masks and had the guns as Donnell drove them to the gas station. *Id.* at 258 (Page ID #1164). A rational jury could have chosen to credit Ward's testimony. Because "[i]t is for [jurors], generally, and not for appellate courts, to say that a particular witness spoke the

truth or fabricated a cock-and-bull story," we do not, and cannot, inquire into Ward's credibility. *United States v. Bailey*, 444 U.S. 394, 414–15 (1980).

Ward's testimony did not stand alone. The government also introduced recorded conversations between Donnell and Ward's wife and recorded phone calls from Donnell to his mother, in which Donnell admitted to his participation in the robbery, including his roles as both the driver and supplier of firearms. R. 55 (Trial Tr. at 454–64) (Page ID #1360–70). Cellphone records showed a substantial volume of phone calls and text messages exchanged between Donnell and Geiger on the night of the robbery, including a call from Donnell to Geiger approximately one minute after the 911 call regarding the robbery was placed, and several messages from Geiger to Donnell after Geiger had been detained by the Elyria Police Department, giving Donnell a "play-by-play" of what was going on. *Id.* at 421–33 (Page ID #1327–39). Finally, Donnell's web search history in the weeks leading up to the robbery showed that he searched for terms including: "Robbery: What is the best way to rob a store"; "How to rob a bank as told by an actual bank robber"; "How to break glass silently"; and "Robbery. How to best rob a store?" *Id.* at 434–41 (Page ID #1340–47). The government therefore provided sufficient evidence for a rational factfinder to find that Donnell intended to facilitate Ward and Geiger's robbery of the gas station.

## C. Aiding and Abetting Another in Using or Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence

Donnell was also convicted of aiding and abetting another in using or carrying, and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 2, 924(c)(1)(A)(ii). R. 32 (Verdict at 2) (Page ID #755). We have held that "[a]iding and abetting in the carrying of a firearm during commission of a crime of violence requires that the defendant 'associate himself with the venture, that he participates in it as something he wishes to bring about,

6

and that he seek by his action to make it succeed.'" *Gooch*, 850 F.3d at 288 (quoting *United States v. Lowery*, 60 F.3d 1199, 1202 (6th Cir. 1995)). If a defendant has "advance knowledge" that their confederate will carry a gun in the commission of the predicate offense, the defendant has the requisite intent for aiding and abetting a violation of 18 U.S.C. § 924(c). *Rosemond*, 572 U.S. at 78. This court has interpreted *Rosemond* to require advance knowledge of only the fact that the confederate would carry or use a firearm. *United States v. Johnson*, 702 F. App'x 349, 358–59 (6th Cir. 2017). We have not required that the government prove advance knowledge that the firearm would be brandished in the commission of the offense to sustain a conviction pursuant to 18 U.S.C. § 924(c)(1)(A)(ii). *Id.* at 359.

Donnell argues first that Ward did not testify that Donnell knew that he carried a firearm during the commission of the robbery, nor did he testify that Donnell supplied him with a firearm. Although Ward did not testify that Donnell personally handed him a firearm, Ward did testify that the two guns used in the robbery were obtained from Donnell's home and that Geiger and Ward had the guns as Donnell drove them to the gas station. R. 55 (Trial Tr. at 257–58, 271) (Page ID #1163–64, 1177). This is corroborated by Donnell's own statements made during recorded conversations, in which he seemingly admits to purchasing and supplying the weapons. *Id.* at 463 (Page ID #1369). A rational factfinder could find this evidence sufficient to prove that Donnell had advance knowledge that his co-defendants would carry or use a firearm during the robbery.

Donnell next argues that the government failed to prove at trial that an actual firearm was used during the robbery. Although a firearm used in the commission of a crime of violence must be real to sustain a conviction pursuant to 18 U.S.C. § 924(c), we have previously held that lay witness testimony on this point is sufficient. *See United States v. Crowe*, 291 F.3d 884, 887 (6th

Cir. 2002) (holding that the testimony of a federal agent who was "sure" he saw the butt of a black semi-automatic handgun in the defendant's waistband, coupled with the recovery of such a firearm from the defendant's bedroom, was sufficient to sustain a conviction pursuant to 18 U.S.C. § 924(c)); *United States v. Willis*, 232 F. App'x 527, 537 (6th Cir. 2007) (holding that the testimony of store employees that defendants brandished a firearm during the robberies was sufficient to sustain defendants' convictions pursuant to 18 U.S.C. § 924(c)). "Indeed, '[t]he mere possibility that the object seen by witnesses may have been a sophisticated toy or other facsimile does not necessarily create a reasonable doubt, nor is the government required to disprove that theoretical possibility.'" *Crowe*, 291 F.3d at 887 (alteration in original) (quoting *United States v. Jones*, 16 F.3d 487, 491 (2d Cir. 1994)).

As detailed previously, Ward testified that he obtained a gun from Donnell's home and Donnell himself admitted in a recorded phone call to purchasing the guns used in the robbery. R. 55 (Trial Tr. at 257, 271, 463) (Page ID #1163, 1177, 1369). The gas station clerk also testified that Ward pointed a gun at her during the robbery. *Id.* at 305 (Page ID #1211). None of the witnesses indicated any possibility that the firearm was not real. Finally, law enforcement recovered a gun from the surrounding area with Ward's DNA on it. *Id.* at 403, 450 (Page ID #1309, 1356). This is sufficient evidence from which a rational factfinder could infer that an actual firearm was used in the robbery. The district court therefore did not err in denying Donnell's motion for judgment of acquittal.

## III. RULE OF COMPLETENESS

Donnell next argues that the district court erred by failing to admit four of his jail calls in their entirety after the government had introduced only portions of those calls. He contends that

admitting only portions of the calls violated the rule of completeness, which was "partially codified in Federal Rule of Evidence 106." *United States v. Crosgrove*, 637 F.3d 646, 661 (6th Cir. 2011).

We review for abuse of discretion a district court's evidentiary rulings. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997). Rule 106 provides that, "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." In ruling on a Rule 106 request:

> [T]he district court must determine "(1) whether the additional evidence explains the evidence already admitted; (2) whether it places the admitted evidence in its proper context; (3) whether its admission will serve to avoid misleading the trier of fact; and (4) whether its admission will insure a fair and impartial understanding of all of the evidence."

*United States v. McAllister*, 693 F.3d 572, 584 (6th Cir. 2012) (quoting *United States v. Glover*, 101 F.3d 1183, 1190 (7th Cir. 1996)). The doctrine of completeness, however, "does not make inadmissible evidence admissible," nor does it allow for the admission of other parts of the statement unless it is "truly necessary to correct a 'misleading impression'" resulting from the incomplete admitted portions. *Crosgrove*, 637 F.3d at 661 (quoting *United States v. Howard*, 216 F. App'x 463, 472 (6th Cir. 2007)).

The district court did not abuse its discretion in admitting only portions of Donnell's jail calls because, both at trial and on appeal, Donnell has failed to explain how the admitted portions of the jail calls were misleading or how the entire calls would provide the proper context for the admitted portions. *See McAllister*, 693 F.3d at 584. At trial, Donnell's counsel objected on the basis that the evidence "should be more complete" and that the calls in their entirety would provide a "more full context." R. 55 (Trial Tr. at 475) (Page ID #1381). That, however, is not the standard

9

for a Rule 106 objection, and counsel did not provide any further explanation as to the misleading nature of the call excerpts or how it would be cured by admitting the calls in their entirety. We therefore cannot conclude that the district court abused its discretion in refusing to admit the entire calls.

## IV. FAIR CROSS SECTION

We review de novo the question of whether a defendant's right to a jury selected from a fair cross section of the community has been violated. *United States v. Odeneal*, 517 F.3d 406, 412 (6th Cir. 2008). It is well established that "the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial" and "is fundamental to the American system of justice." *Taylor v. Louisiana*, 419 U.S. 522, 528, 530 (1975). This requirement, however, applies to the venire from which a jury is drawn, and not to the petit jury itself. *Id.* at 538 ("[W]e impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population."). To establish a prima facie violation of the fair cross section requirement:

> [A defendant] must show: "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process."

*Berghuis v. Smith*, 559 U.S. 314, 319 (2010) (quoting *Duren v. Missouri*, 439 U.S. 357, 364 (1979)).

Donnell has failed to present any evidence as to the second and third prongs of the prima facie test. With respect to the second prong, "the defendant must demonstrate the percentage of the community made up of the group alleged to be underrepresented, for this is the conceptual

benchmark" for the fair-cross-section requirement. *Duren*, 439 U.S. at 364. But Donnell has not provided any information regarding the percentage of African Americans within the total population eligible for jury service in the Northern District of Ohio; instead, he states that only two of the forty-nine prospective jurors in his case were Black. Appellant Br. at 41. Although the number of Black potential jurors in Donnell's venire does appear to be troublingly low, we cannot determine whether this level of representation is fair and reasonable without reference to some data regarding the percentage of African Americans within the population eligible for jury service. *Odeneal*, 517 F.3d at 412. Donnell, moreover, "must show more than that [his] particular panel was unrepresentative," because we have read *Duren* to stand for the proposition that we must look to the *venires* from which juries are selected, and not just the particular venire from which that defendant's jury is drawn. *United States v. Allen*, 160 F.3d 1096, 1103 (6th Cir. 1998).

Likewise, Donnell presents no factual basis from which we can infer that any underrepresentation resulted from the systemic exclusion of African Americans from the jury pool. *See Duren*, 439 U.S. at 366. Because Donnell has failed to establish a prima facie violation, we cannot conclude that his right to a jury drawn from a fair cross section of the community was violated. *See United States v. Dunnican*, 961 F.3d 859, 880 (6th Cir. 2020) ("[Appellant]'s mere assertion of a Sixth Amendment violation is not enough to establish that such a violation occurred.").

## V. SUBSTANTIVE REASONABLENESS

Finally, Donnell challenges the substantive reasonableness of his sentence. We review for abuse of discretion the reasonableness of a sentence. *Gall v. United States*, 552 U.S. 38, 41 (2007). Because Donnell's sentence falls within the guidelines range, it is presumptively reasonable.

*United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc). "The touchstone for our review is whether the length of the sentence is reasonable in light of the § 3553(a) factors." *United States v. Tate*, 516 F.3d 459, 469 (6th Cir. 2008). In inquiring into the substantive reasonableness of a sentence, we have recognized that that "a degree of internal dissonance" is "likely unavoidable, given the inherent conflicts between the various § 3553(a) sentencing factors" and that "[e]ngaging with this tension is not a sign of judicial arbitrariness; rather, it is part and parcel of the basic sentencing inquiry." *United States v. Elmore*, 743 F.3d 1068, 1073 (6th Cir. 2014).

Donnell argues that the district court abused its discretion by failing adequately to consider the sentencing factors set forth in 18 U.S.C. § 3553(a); failing to explain the reasoning behind the sentence imposed; failing to consider the harsh nature of the seven-year mandatory-minimum consecutive sentence required by 18 U.S.C. § 924(c)(1)(A)(ii) for count two; failing to address the defense's arguments; and making mistakes of fact in imposing the sentence. Donnell fails, however, to provide any factual basis or explanation for his arguments, beyond stating that the district court had "incorrect recollections . . . as to what the actual trial testimony was," and pointing to the fact that his total sentence of 162 months' imprisonment was longer than that of his co-defendants, Ward and Geiger, who were sentenced to 108 months' and 156 months' imprisonment, respectively. Appellant Br. at 45.

At Donnell's sentencing hearing, the district court elaborated at length on the reasoning behind his sentencing decision and discussed the nature and circumstances of the offenses; Donnell's history and characteristics; the necessity of the sentence in order to protect the public and provide deterrence; and the average national sentence for individuals in the same criminal history category who had committed the same offense. R. 57 (Sent'g Hr'g Tr. at 11–18) (Page ID

12

#1498–505). The district court addressed Donnell's mitigating evidence but felt that his criminal history, which included multiple physical assaults, including one involving a firearm, and his level of involvement in the offenses merited a sentence at the higher end of the guidelines range. *Id.* at 16 (Page ID #1503). The district court also explained that some of Donnell's mitigating evidence was double-edged, in that he was never abused or neglected as a child and was always provided with necessities. *Id.* at 14 (Page ID #1501).

In determining Donnell's sentence, the district court also noted that the average national sentence for offenses involving robbery in which the convicted person had the same criminal history category as Donnell was eighty-eight months' imprisonment, not including any additional sentence for brandishing a firearm. *Id.* at 17 (Page ID #1504). Donnell's seventy-eight-month sentence on the predicate offense, count one, is therefore below the national average. The district court was correct in addressing the national disparities in sentencing instead of the disparities between Donnell and his co-defendants. *See United States v. Conatser*, 514 F.3d 508, 521 (6th Cir. 2008). We have recognized that "[d]isparities between the sentences of coconspirators can exist for valid reasons, such as differences in criminal histories, the offenses of conviction, or one coconspirator's decision to plead guilty and cooperate with the government." *Id.* at 522. As in *Conatser*, one of Donnell's co-defendants, Ward, cooperated with the government and testified against Donnell at his trial. R. 55 (Trial Tr. at 245–95) (Page ID #1151–201). It is therefore unsurprising that Ward received a substantially lower sentence than Donnell.

The district court considered all pertinent § 3553(a) factors in determining Donnell's sentence and provided detailed reasoning as to how it balanced the factors. There is no indication that the district court selected the sentence arbitrarily or considered impermissible factors. We

cannot say that Donnell's within-guidelines sentence was substantively unreasonable, regardless of whether we would have imposed the same sentence.

## VI.  CONCLUSION

For the foregoing reasons, we **AFFIRM** Donnell's convictions and sentence.