**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Vernon Owen VANNERSON (85–1507), and Lorena Gleason Stevens Vannerson (85–1518), Defendants-Appellants.**

Nos. 85–1507, 85–1518.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 7, 1986.

Decided March 18, 1986.

Certiorari Denied May 19, 1986.
See 106 S.Ct. 1991.

222

Kenneth P. Tableman (argued), Lansing, Mich., for defendants-appellants.

Thomas J. Gezon, Chief Asst. U.S. Atty. (argued), Grand Rapids, Mich., for plaintiff-appellee.

Before KEITH and GUY, Circuit Judges, and TAYLOR, District Judge.[*]

GUY, Circuit Judge.

Defendants appeal from a conviction by a jury in a criminal case. Defendant Vernon Vannerson (Vernon) was convicted of theft of money from a federally insured bank, in violation of 18 U.S.C. § 2113(b), and receiving, concealing, and disposing of stolen bank funds, in violation of 18 U.S.C. § 2113(c). Defendant Lorena Vannerson (Lorena) was convicted of a violation of § 2113(c) and also of aiding and abetting, 18 U.S.C. § 2, the only offenses with which she was charged. Although each defendant raises several issues on appeal, the general thrust of defendants' claims relates to an insufficiency of the evidence. Viewing the evidence as we must on appeal in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1941), and finding substantial evidence to support the jury verdict, *United States v. Stone*, 748 F.2d 361 (6th Cir.1984), we affirm.

**I.**

On December 12, 1979, a bag of money containing $63,060 in $100 and $50 dollar bills was taken from an armored truck operated by Wolverine Dispatch. The truck was operated by Jedd Gerken, an employee of Wolverine, and defendant Vernon was working as a contract guard on the truck being employed part time by Annand Security. During the course of the

---

[*] Honorable Anna Diggs Taylor, United States District Court, Eastern District of Michigan, sitting by designation.

day, Gerken left Vernon alone with the truck on several occasions, during which time Vernon had access to the missing bag of money. The only way the bag could have disappeared was through the actions of either Gerken or Vernon. Both denied any involvement when questioned by the FBI. The FBI also questioned Vernon's then girlfriend, and later wife, Lorena Stevens, who had driven Vernon to and from work on the day in question.[1]

Subsequent to the theft, the FBI maintained surveillance on Gerken, Vernon, and Lorena. Gerken's surveillance revealed nothing unusual. However, the surveillance of both Vernon and Lorena proved fruitful. Right after the robbery, both Vernon and Lorena started making substantial cash purchases and bank deposits involving $50 and $100 bills. Prior to the theft as well as thereafter, neither defendant had any substantial demonstrable sources of income.[2]

In the spring of 1984, both defendants were interviewed again and confronted with the information that the FBI now had on their incomes and recent expenditures. Both defendants gave stories which were inconsistent and which proved to be false in part. On December 6, 1984, both defendants were indicted, and on February 20, 1985, both defendants were found by a jury to be guilty as charged. At trial the evidence against both defendants was largely circumstantial, and the government relied heavily on the income and expenditure histories of the defendants. Both defendants testified and offered explanations for the source of the money they spent.

On appeal, defendants raise the following specific issues: (1) in this "net worth" prosecution, the government failed to show its agents made reasonable and feasible efforts to investigate innocent explanations for the defendants' increase in worth; (2) the trial court improperly admitted evidence of Vernon's failure to file state income tax returns and of his cash purchases; (3) the trial court erred in admitting evidence of Lorena's purchases and banking transactions when there was no substantial evidence linking her to the theft; and (4) the government failed to produce sufficient evidence to support beyond a reasonable doubt a finding of guilty. These issues will be considered seriatim.

1. *In this "net worth" prosecution, the government failed to show its agents made reasonable and feasible efforts to investigate innocent explanations for the defendants' increase in worth.*

▇▇▇ Defendants' arguments are predicated upon the proposition that this was a "net worth" prosecution and rely for support on *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954). Defendants' premise is erroneous and the *Holland* case is inapposite. Unlike *Holland,* this was not a net worth tax case. Rather, the government introduced evidence to show that defendants were living above the means provided by their known incomes. In a non-tax fraud case, it is not necessary to first establish a defendant's net worth before introducing evidence of expenditures exceeding known income. *United States v. Falley,* 489 F.2d 33, 39 (2nd Cir.1973). *Falley* was followed by this court in *United States v. O'Neal,* 496 F.2d 368, 370–71 (6th Cir.1974). *Holland* was a tax evasion case in which the government elected to proceed to prove its case by the "net worth" method. In tax cases such as *Holland,* it is necessary for the government to establish an opening net worth with reasonable certainty. In the case at bar, however, the sudden expenditure by the defendants of cash in denominations of $50 and $100 was probative of their involvement in the theft and concealing the money taken from the armored truck. Under such circumstances, there is no requirement of establishing an opening net worth for a defendant.

---

**1.** The two defendants married in 1982.

**2.** The government's summary charts showing defendants' income and expenditures for the

relevant period are reproduced as Appendices A, B, and C to this opinion.

*Holland* also stands for the proposition as suggested by defendants that:

> When the Government rests its case solely on the approximations and circumstantial inferences of a net worth computation, the cogency of its proof depends upon its effective negation of reasonable explanations by the taxpayer inconsistent with guilt. Such refutation might fail when the Government does not track down relevant leads furnished by the taxpayer—leads reasonably susceptible of being checked, which, if true, would establish the taxpayer's innocence.

348 U.S. at 135–36, 75 S.Ct. at 135.

■ This admonition was pronounced in the context of a tax prosecution. It is not necessary to reach a determination as to whether it is applicable in other criminal prosecutions by analogy because, here, although both defendants offered explanations for where they got the money they were spending, such explanations were largely inconsistent and demonstrably false.[3] The government did refute most of defendants' stories, with the possible exception of Vernon's income from playing in a band. As to the alleged band income, the FBI did ascertain that no income was reported to the government and, at trial, Vernon and several of his musician friends testified on this issue. The jury heard the testimony and disbelieved it, so it was not a matter not brought to its attention.[4] In fact, the falseness of both defendants' explanations was further evidence as to consciousness of guilt, and the jury was so instructed. *United States v. McDougald*, 650 F.2d 532 (4th Cir.1981).

2. *The trial court improperly admitted evidence of Vernon's failure to file state income tax returns and of his cash purchases.*

■ The failure to file income tax returns was probative relative to Vernon's income prior to the alleged theft of the money. It was one of the ways the government negated Vernon's claim of income from playing in bands. *United States v. Hinton*, 543 F.2d 1002, 1012–13 (2nd Cir. 1976). As for the sudden rash of cash purchases made by the defendants, this was circumstantial evidence of their involvement in the theft of the money, given that Vernon had access to the money the day it disappeared and neither defendant had an earnings' history which would account for their sudden spending spree immediately subsequent to the theft.

3. *The trial court erred in admitting evidence of Lorena's purchases and banking transactions when there was no substantial evidence linking her to the theft.*

■ Lorena's argument here is based upon her contention that "[t]here simply was no evidence which placed her at the scene of the taking of the bank money or implicated her in a substantial way." (Def. Lorena Vannerson's Brief at 16.) This contention misperceives the elements of the offense of which she was convicted. Unlike her husband, Lorena was not charged with the theft but only receiving, concealing, or disposing of the stolen bank funds. There is no need to place her at the "scene of the taking," although, in fact, she did

3. For example, Vernon said some of his money came from illegal marijuana sales but then later changed his story and said he had not sold any marijuana since the birth of his last child in 1977. Similarly, Lorena stated she received an $8,000 personal injury settlement, that she had money in savings and checking accounts and bonds, and $3,700 from a house sale. The facts were that she had insufficient funds in any account to cover her purchases until *after* the theft, her bonds totalled $300.00, she only received initially $1,000 of the alleged $8,000 injury settlement, and the house sale was two to three years after the theft.

4. This is not to suggest, however, that any lapse in the government's proofs would be cured by defendants' evidence, since defendants moved for a judgment of acquittal at the close of the government's case, and it is at this point in time that the sufficiency of the government's proofs have to be measured. It should also be noted that the government did subpoena the musician friends of defendant Vernon, although it did not call them to testify, so that it is clear that these persons were interviewed by the FBI.

drive Vernon to and from work the day of the robbery. Furthermore, it is undisputed that Vernon told her of the missing money the day it disappeared and that she was questioned by the FBI the next day. Lorena had full knowledge of the theft of the money by her own testimony. Her record of significant cash expenditures shortly after the robbery, her demonstrated falsehoods concerning her income, and her relationship with Vernon were all appropriate evidentiary factors for the jury to consider in assessing her guilt. She was also charged with and convicted of aiding and abetting (18 U.S.C. § 2), and there is no requirement that an aider and abettor play a "substantial" role in the crime. *United States v. Wiebold*, 507 F.2d 932 (8th Cir. 1974); *United States v. Bradley*, 421 F.2d 924 (6th Cir.1969).

4. *The government failed to produce sufficient evidence to support beyond a reasonable doubt a finding of guilty.*

■ This last argument of defendants is little more than a reprise of their other arguments. A defendant claiming "insufficiency of the evidence bears a very heavy burden." *United States v. Soto*, 716 F.2d 989, 991 (2nd Cir.1983). On review, all evidence must be construed in a manner most favorable to the government. *United States v. Green*, 548 F.2d 1261, 1266 (6th Cir.1977). Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt. *United States v. Stone*, 748 F.2d 361 (6th Cir.1984).

■ Here the jury was presented with ample evidence from which they could conclude beyond a reasonable doubt defendants' guilt. Vernon was on the truck and was one of only two persons who could have taken the money. The other person was cleared by subsequent investigation, while Vernon and his girlfriend, Lorena, went on a cash spending binge with bills in the exact denominations of the bills which were stolen. Neither defendant had any past substantial income and both offered inconsistent and false explanations for the source of their funds. The trial court correctly refused to grant defendants' motions for acquittal made at the close of the government's case and after the jury verdict.

The jury verdict of guilty is affirmed as to both defendants.[5]

5. It should also be noted, in connection with the issues raised by defendants in this appeal relative to the introduction of evidence relating to their financial transactions, that there were no trial objections to such evidence. Under such circumstances, the defendants must demonstrate plain error, which they have failed to do. Fed.R.Crim.P. 52(b).

## APPENDIX A

# Expenditures

## During Period December, 1979 thru May, 1980

### Vernon Owen Vannerson

| | |
|---|---:|
| January 2, 1980 – Purchase of Ford van | $ 2,400.00 |
| March 20, 1980 – Purchase of fence | 805.36 |
| March, 1980 – Installation of fence | 200.00 |
| April 1, 1980 – Purchase of Champion Motor Home | 6,800.00 |
| April 1, 1980 – Purchase of bumper and windshield for motor home | 350.00 |
| April 1, 1980 – License and title fees for motor home | 266.00 |
| December, 1979 thru May, 1980 – Mortgage payments for property at 2719 Cabot | 1,224.00 |
| April 23, 1980 – Purchase of home located at 1518 West Jolly, Lansing, MI (deposit and closing fees) | 3,594.00 |
| **Total Expenditures** | **$15,639.36** |

### Lorena Stevens

| | |
|---|---:|
| January, 1980 – Paid outstanding bills on car | $ 197.00 |
| January, 1980 and March, 1980 – Paid mortgage payments for property located at 921 East Saginaw, Lansing, MI | 1,000.00 |
| March 25, 1980 – Purchase of car from Dystra Ford | 2,629.00 |
| April 1, 1980 – Purchase of carpet | 1,225.77 |
| April, 1980 – Purchase of home located at 4823 Ingham, Lansing, MI (deposit and closing fees) | 6,548.81 |
| | **$11,600.58** |

## APPENDIX B

# Income

## During Period December, 1979 thru May, 1980

### Vernon Owen Vannerson

| | |
|---|---:|
| Rent receipts from State of Michigan Aid to Dependent Children (ADC) for house located at 2719 Cabot, Lansing, Michigan | $1,224.00 |
| Net earnings from Annand Security | 579.67 |
| **Total Income** | **$1,803.67** |

### Lorena Stevens

| | |
|---|---:|
| Disability payments at rate of $142.00 per week | $3,824.00 |
| | **$3,824.00** |

## APPENDIX C
# Analysis of Cash Deposits
## During Period December, 1979 thru May, 1980

| | Lorena Stevens Checking Account No. 33494360 at Michigan National Bank | | Lorena Stevens Savings Account No. 0306405804 at Michigan National Bank | | Lorena Stevens/ Vernon Vannerson Checking Account No. 61020 29037 at American Bank & Trust | |
|---|---|---|---|---|---|---|
| BEGINNING BALANCE | 11/23/79 | $ 0.00 | 12/13/79 | $ 15.68 | 12/13/79 | $ 0.00 |
| CASH DEPOSITS | 12/14/79 | 400.00 | 12/14/79 | 200.00 | 3/25/80 | $1,750.00 |
| | 3/26/80 | 3,000.00 | 12/18/79 | 200.00 | 4/18/80 | 1,000.00 |
| | 4/7/80 | 200.00 | 2/5/80 | 500.00 | 5/16/80 | 900.00 |
| | 5/16/80 | 500.00 | | | | |
| TOTAL | | $4,100.00 | | $915.68 | | $3,650.00 |