**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Tony Lynn FORTSON; Elberto Anthony Paulino, Defendants– Appellants.**

**Nos. 98–1496, 98–1897.**

United States Court of Appeals, Sixth Circuit.

Argued: Aug. 13, 1999.

Decided: Oct. 12, 1999.

---

Ross G. Parker (argued and briefed), Office of the U.S. Attorney, Detroit, Michigan, for Appellee.

Robert M. Morgan, Detroit, Michigan, Richard M. Lustig (argued and briefed), Richard M. Lustig Law Office, Birmingham, Michigan, for Appellants.

Before: KRUPANSKY and RYAN, Circuit Judges, and HULL, District Judge.*

RYAN, Circuit Judge.

For the purposes of issuing our decision, we have consolidated these two cases involving the same drug conspiracy transaction.

The defendants were convicted of conspiracy to possess with intent to distribute and to distribute cocaine, contrary to 21 U.S.C. § 846, and aiding and abetting the possession with intent to distribute cocaine, contrary to 18 U.S.C. § 2. The district court denied the motions for judgment of acquittal.

The principal issue in each appeal is the sufficiency of the evidence to justify conviction, although there are other issues as well, including a Fed.R.Evid. 404(b) issue in each case. In our judgment, all are without merit, and we shall affirm in both cases. We take up the sufficiency of the evidence issue first.

## I.

David Kritchman hired a neighborhood acquaintance in New York, Edwin Martinez, to drive a rented van from the Bronx, New York, to a Red Roof Inn near Michigan Avenue and Telegraph Road in Dearborn, Michigan. Martinez, who testified at the defendants' joint trial, heard Kritchman and another man discuss hiding drugs in the van. Subsequently, Kritchman directed Martinez to leave the van with Kritchman and defendant Elberto Paulino at Kritchman's residence in New York, while Martinez went to pick up his cousin, Travis Rosario, who was to make the trip to Michigan with him. Kritchman later instructed Martinez and Rosario to drive to Michigan and gave them two pager numbers to call when they arrived. They drove to the Red Roof Inn in Dearborn Heights, Michigan, checked in, and called the telephone numbers, one of which, police later determined, went to a pager found in defendant Paulino's possession.

Fifteen minutes after the page, the police observed a Toyota Camry automobile driven by defendant Tony Fortson, with Kritchman and Paulino riding as passengers, in the Red Roof Inn parking lot. Officers later observed Kritchman apparently performing counter-surveillance from the hotel balcony. The officers also observed Martinez and Rosario as they returned to the motel after having gone somewhere to get some food, and saw them speak to Kritchman while Paulino stood 20 feet away watching the conversations and Fortson sat in the Camry. Kritchman told Martinez to follow the Camry, and the cars "caravanned" out of the lot; Martinez and Rosario were in the van, and Kritchman, Paulino, and Fortson were in the Camry, Fortson driving.

When the police stopped the van about a mile from the departure point, the occupants of the Camry turned around to observe what was occurring. Fortson slowed the Camry, then pulled into an Arby's restaurant parking lot, about one mile further north of the place where the van was stopped. He parked the vehicle so that his passengers could observe northbound traffic. In the meantime the police determined that the van had been reported stolen. They searched the vehicle, found eight kilograms of cocaine, and then arrested Martinez and Rosario. After a few minutes, Fortson pulled the Camry up to the Arby's pickup window, purchased food, and then drove the car to an adjacent lot, parking again where the occupants could

---

* The Honorable Thomas G. Hull, United States District Judge for the Eastern District of Tennessee, sitting by designation.

observe northbound traffic. The officers, who had all the while been conducting surveillance of the Camry, approached the vehicle and spoke to Kritchman, Paulino, and Fortson. In response to questions about where they had just come from, none mentioned the Red Roof Inn or admitted knowing anything about the van. Kritchman and Paulino said they had come from Paulino's girlfriend's house, while Fortson said he was going to get something to eat, and then haltingly said he came from a friend's house. The officers arrested the three after the police at the van informed them of the cocaine seizure. No other evidence relating to the van was found in the Camry, although Fortson had two cell phones and a pager.

Martinez made a full statement to the police and was segregated from the others while in jail. Kritchman and Paulino conferred with Rosario about making sure their stories were consistent and told Rosario to make sure Martinez changed his story. Kritchman and Paulino were released on bond, waited for Martinez and Rosario to be released, and told them to get into a car. While in the car, Kritchman told Martinez to change his story. Paulino and/or Fortson later arranged for Fortson's brother to drive the four, Kritchman, Paulino, Martinez, and Rosario back to New York. Martinez testified that during the ride, Kritchman and Paulino threatened Martinez and told him to change his story.

## II.

Before trial, the government filed notice of its intention to offer Fed.R.Evid. 404(b) evidence. The district court excluded some of the proffered evidence, but, citing both Fed.R.Evid. 401 and Fed.R.Evid. 404(b), allowed evidence of an incident involving Fortson and Paulino that occurred in Oak Park, Michigan, on September 17, 1996. On that date, police stopped Fortson, who was driving a Chevrolet Tahoe, in a traffic stop. He had no license, registration, or proof of insurance; he was arrest-

ed, and the police performed an inventory search of the truck. The officer found three cell phones, two of which were "clone" phones, and a stack of cash in the amount of $8,900. Although Fortson claimed he could not unlock the console in the vehicle and denied knowing who owned the phones or money, the police searched Fortson, found the key to the console on his person, and found the cash in the console. The detective assigned to the case testified at the trial that the phones were clone phones. He explained how telephone cloning works, and explained that it prevented police from being able to trace the user.

Subsequently, Paulino, using the name "Tony Reyes," and Paulino's father appeared at the Oak Park police station with Fortson. They claimed they were the owners of the truck, that they had sold it to Fortson, and that the truck could be released to Fortson. Fortson claimed the $8,900, and it was returned to him.

## III.

Both defendants claim the evidence was insufficient to support their convictions. Fortson argues that the evidence shows, at best, only temporal association with the alleged conspirators and mere presence, but does not show knowing, active participation. He argues that his association with them does not show personal knowledge of the cocaine or the conspiracy, that he shared a common purpose and plan, or that he knowingly participated by aiding and abetting. Paulino also argues that the evidence shows only mere presence, and does not show knowing participation.

The defendants ask us to assess their arrests and convictions as unjustified in the evidence and reminiscent of the closing scene in the classic movie, "Casablanca," wherein, following the shooting of Major Strasser by Rick, Captain Louis Renault, who has witnessed the shooting, smiles at Rick and on the telephone instructs his office to "round up all the usual suspects."

The argument is engaging, but the "scenes" are not comparable.

This court reviews challenges to the sufficiency of the evidence to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See United States v. Avery*, 128 F.3d 966, 971 (6th Cir.1997). In conducting this review, we consider the evidence in the light most favorable to the prosecution. "A defendant claiming 'insufficiency of the evidence bears a very heavy burden.'" *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir.1986) (citation omitted). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *Id.*

Taking the evidence in a light most favorable to the prosecution, we conclude that the defendants have failed to sustain their burden of demonstrating insufficiency. Fortson drove the car that transported the key players. He had a prior association with Paulino that tends to negate the defense of innocent and unknowing participation. He did not stop when the van was pulled over, instead driving a safe distance ahead and then pulling off the road in order to perform surveillance of the stop. Then, when confronted by the police, he lied regarding his recent whereabouts. Fortson is the only member of the group who lives in the Detroit area; the others came to the Detroit area from New York and carried New York identification. The absence of evidence showing Fortson's specific role in the criminal transaction does not preclude a jury from rationally concluding from the evidence that he intentionally participated in the scheme in some capacity. Likewise, Paulino was present at all the critical stages of the conspiracy, and he was in possession of one of the pagers the couriers "beeped" on their arrival. He threatened the government's star witness while trying to get the story straight among the coconspirators. The district court did not err in refusing to grant the defendants' motions for acquittal. The evidence in each case was sufficient to allow a juror, reasonably and rationally, to conclude that the defendants knew of, intended to join, and participated in the conspiracy; that they associated themselves with the venture and sought by their acts to make it succeed.

## IV.

The defendants also argue that the district court erred when it admitted evidence of the Oak Park incident over their objections. They claim the evidence is propensity evidence that was inadmissible under Fed.R.Evid. 404(b). We have some doubt whether the evidence is admissible under Rule 404(b), particularly with regard to whether the evidence, if offered for the purpose of showing knowledge, could survive a proper balancing analysis under Fed.R.Evid. 403. However, the district court also admitted the evidence as independently relevant under Rule 401.

"[W]e review the trial court's determination of relevancy for abuse of discretion." *United States v. Chowdhury*, 169 F.3d 402, 405 (6th Cir.1999). Both defendants maintained that their presence was innocent, mistaken, and/or unknowing. The Oak Park incident tended to make their explanation of their involvement less likely in that it showed a prior association between Fortson and Paulino, possession of materials commonly used in drug trafficking to avoid police detection of telephone calls, and a willingness to engage in collaborative lying. We agree that the evidence was relevant, and we conclude that the district court did not abuse its discretion in admitting the evidence as independently admissible under Rule 401.

## V.

Fortson also claims his trial counsel failed to render constitutionally ef-

fective assistance, because he failed to introduce evidence demonstrating Paulino's ties to the state of Michigan. Fortson claims such evidence would have lessened the impact of the evidence that Fortson was the only defendant from Michigan and would have made the conclusion that Fortson must have been involved less logical. This court generally does not review claims of ineffective assistance of counsel for the first time on appeal, instead requiring that a record be developed pursuant to a motion under 28 U.S.C. § 2255. *See United States v. Pruitt,* 156 F.3d 638, 646 (6th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 846, 142 L.Ed.2d 700, and *cert. denied,* —— U.S. ——, 119 S.Ct. 1157, 143 L.Ed.2d 223 (1999). An exception to this principle exists for cases in which the record is adequately developed to allow the court to properly assess the merits of the issue. *See id.* The government does not contend that the record is insufficient to decide Fortson's claim of ineffective assistance, and we conclude that further factual development is unnecessary to our review. Consequently, we shall address the issue.

■■■ Claims of ineffective assistance of counsel are mixed questions of law and fact; we review such claims *de novo. United States v. Pierce,* 62 F.3d 818, 833 (6th Cir.1995). A defendant claiming ineffective assistance must show that trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that such errors "prejudiced the defense ... so ... as to deprive the defendant of a fair trial." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Constitution imposes a standard "of reasonably effective assistance." *Id.* We "presume from the outset that a lawyer is competent, and therefore, 'the burden rests on the accused to demonstrate a constitutional violation.'" *Pierce,* 62 F.3d at 833 (quoting *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)). Moreover, in applying *Strickland,* "a court

must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

■■■ The trial process contains a myriad of complex decisions that, for strategic reasons, are sound when made, but may appear unsound with the benefit of hindsight. The defendant, thus, must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (citation omitted). We conclude that Fortson has not overcome the presumption that his counsel's decision not to emphasize Paulino's Michigan ties was sound trial strategy, and that Fortson's ineffective assistance claim falls far short of the *Strickland* standard. We can conceive of numerous reasonable strategic motives for the decision. For example, Fortson's defense was mere presence or accidental and unintentional involvement. Fortson's counsel might have reasonably concluded that emphasis on Paulino's Michigan ties would have focused the jury's attention on the prior connection between Fortson and Paulino that stemmed from the Oak Park incident, thereby intensifying the jury's association of Fortson with a coconspirator who, like the drugs and the other conspirators, came from New York. Fortson has not overcome the presumption of effective assistance or shown prejudice that calls the fairness of his trial into question.

## VI.

■■■ Finally, Paulino contends that evidence of the threats to Martinez and Rosario after the conspirators' arrests constitutes evidence of a new conspiracy to cover up the underlying facts and amounts to a constructive amendment of·the indictment. Because Paulino did not object to the admission of this evidence at trial, we review its admission for plain error. *United States v. Kincaide,* 145 F.3d 771, 783 (6th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1085, 143 L.Ed.2d 86 (1999).

The district court admitted the evidence under Fed.R.Evid. 801(d)(2)(A) as evidence of consciousness of guilt. "[S]poilation evidence, including evidence that the defendant threatened a witness, is generally admissible because it is probative of consciousness of guilt." *United States v. Maddox,* 944 F.2d 1223, 1230 (6th Cir. 1991); *see United States v. Mendez–Ortiz,* 810 F.2d 76, 79 (6th Cir.1986). We find no plain error in the admission of this evidence in Paulino's case. We also reject Paulino's passing contention that failure to challenge the evidence on these grounds was constitutionally ineffective assistance.

For the foregoing reasons, we AFFIRM the district court judgment in both cases.