NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 04a0002n.06
Filed: September 30, 2004

Case No. 03-1819

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| v. | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| DAVID BENNETT, | ) | |
| | ) | O P I N I O N |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |
| | ) | |

Before: BATCHELDER and DAUGHTREY, Circuit Judges; and DOWD, Senior District Judge.[*]

PER CURIAM

## I. Introduction.

The Appellee, David Bennett, was convicted on May 3, 2002 by a jury following a four-day trial of the  second count in the indictment charging him with a violation of 42 U.S.C. § 408 (a)(3).[1]

---

[*] The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

[1] The second count in the indictment charged:  From approximately April of 1993 to approximately May of 1998, the precise times unknown, in the Eastern District of Michigan, Northern District, Clyde Fisher and David Bennett, defendants herein, did knowingly make, and cause to be made, false statements and representations to the Social Security Administration as to a material fact, that is the true identity of Clyde Fisher who was employed under the name and social security number of another, that fact being material to the determination by the Social Security Administration of Clyde Fisher's rights to social security disability benefits, all in violation of Title 42, United States Code, section 408(a)(3).  JA at 15.

(Case No. 03-1819)

Bennett made a Criminal Rule 29 motion for an acquittal after the government rested its case-in-chief and the district court took the motion under advisement and deferred a ruling.[2] Following Bennett's conviction, the district court granted the Rule 29 motion,[3] and the government appeals. After review, we reverse and remand for sentencing. Our analysis follows.

David Bennett was employed at Labadie automobile dealership as its CEO. Clyde Fisher worked for Labadie after he had been awarded Social Security Disability Benefits ("DIB"). Initially, Clyde Fisher received a Form 1099 to report his earnings at Labadie. The arrangement then changed. Clyde Fisher was paid under his wife Mary Fisher's Social Security Number and continued to receive DIB. Both Fishers, as well as other employees of Labadie, testified as government witnesses. It is the government's position that the testimony of the Fishers combined with the testimony of the Labadie employees, Dawn Bukowski and Jean Toth, supports the jury guilty verdict as to Count 2 under a *Jackson v. Virginia*, 443 U.S. 307 (1979) analysis. Specifically, the government contended that the testimony supports the finding that Bennett did knowingly make and cause to be made false statements and representations to the Social Security Administration as to a material fact, that is, the true identity of Clyde Fisher who was employed under the name and Social Security Number of another, that fact being material to the determination by the Social Security Administration of Clyde

---

[2] Bennett was also named in the first count of the indictment with the crime of conspiracy with alleged co-conspirators, Clyde Fisher and Mary Fisher, to defraud the United States. The jury acquitted Bennett on Count 1. Both Fishers entered pleas of guilty and testified as government witnesses.

[3] The district court's opinion granting Bennett's Rule 29 motion and the judgment entry vacating the sentence were dated May 28, 2002. However, both the district court's opinion and the judgment entry bear the filing date of May 28, 2003. The government's notice of appeal was filed on June 26, 2003 and no claim is advanced by Bennett that the notice of appeal was untimely filed.

Fisher's rights to DIB.

## II. A Review of the Government's Evidence.

Clyde Fisher related that he had received a disability pension from a former employer, General Motors, and was also awarded DIB. JA at 276. Subsequently, he began working at Labadie and receiving Form 1099s with no taxes withheld. The Form 1099 arrangement for payments to Clyde Fisher then changed; and at David Bennett's suggestion, he was placed on the payroll as Mary Fisher using her Social Security Number. His incriminating testimony follows:

Q       Did there come a time when Mr. Bennett talked to you about needing to do something regarding paperwork for your full time employment at Labadie?

A       Yes.

Q       Tell us how that happened.

A       Dave came to me and said that we have to do something about this so that the government and Social Security --

THE COURT:  Would you just repeat what you said.

A       Dave Bennett came to me and said that we got to make sure that we pay the government their share of the money and that if we did it this way, I would owe the government a lot of money.

Q       What way?

A       The way I was working under the 10 -- it would have been the 1099.

Q       Okay.  Up until that time you were getting 1099s for your work?

A       Yes.

Q       And so were taxes withheld from the 1099?

A       Repeat that, please.

Q       Do you know whether taxes were being withheld from your 1099 earnings?

A    On a 1099 there's no taxes held, only at the end of the year you get a form.

Q    But if you got on the payroll they would start withholding taxes from you?

A    Yes.

Q    Now let's go back to what Mr. Bennett and you talked about; do you remember the exact date when that happened?

A    Repeat that.

Q    When Mr. Bennett came to you and said we've got to do something different.

A    Yes.

Q    Do you remember that exact date?

A    Not right offhand.

Q    All right. But where were you when you had this conversation?

A    In the back of the washroom.

Q    So you were at the Labadie dealership?

A    Yes.

Q    What was it he said to you about what you had to do?

A    We would have to get it so that we would be able to pay taxes.

Q    Did he make a reference to Social Security?

A    Yes.

Q    What did he say to that?

A    He said that -- I don't understand that.

Q    Do you remember what he said?

A    Can you rephrase it for me, please.

(Case No. 03-1819)

Q   Yes.  Tell us what Mr. Bennett said about Social Security.

A   He said as long as I was on Social Security and he knew that, that he could --
we would make an application out for my wife.

Q   Who came up with the idea of making an application out in your wife's
name?

A   Dave Bennett and I.

Q   Together?

A   Yes.

Q   So you talked about it back and forth?

A   Yes.

Q   And in the course of that conversation, there was discussion about Social
Security.

A   Yes.

Q   And the fact you were already on Social Security?

A   Right.

Q   And did you get paperwork so you could go through with this plan of signing
you up under Mary Fisher's name?

A   Right.

Q   Who gave you the paperwork?

A   Dawn.

JA at 280-82.

Clyde Fisher then recounted taking home the paperwork and having his wife sign the

employment application using her Social Security Number.  Thereafter, he received pay checks from

(Case No. 03-1819)

Labadie in the name of Mary Fisher, she endorsed the checks over to Clyde Fisher, and he cashed the checks.

Dawn Bukowski, a veteran employee of Labadie, testified that she did payroll during the time of the misrepresentation of Clyde Fisher's true name and Social Security Number and had access to the employment files. She identified the employment files and the fact that Clyde Fisher was carried on the books of Labadie as Mary Fisher. She also identified the paperwork of Labadie that put Mary Fisher in the Labadie 401(k) program. The approval for the inclusion of Mary Fisher on the 401(k) program contained the signature of David Bennett and the beneficiary for Mary Fisher was identified as Clyde Fisher. Dawn Bukowski was then asked the identity of the person at Labadie who instructed her to place Mary Fisher on the payroll, and she identified David Bennett as that person in the following testimony:

Q       . . . were you aware of a person by the name of Mary Fisher actually working at Labadie during this time frame?

A       No.

Q       And who was working under the name of Mary Fisher?

A       Clyde Fisher.

Q       Did you know that when you put Mary Fisher on the payroll?

A       Yes.

Q       Who told you to put Clyde Fisher on the payroll as Mary Fisher?

A       Dave.

Q       Dave who?

A       Dave Bennett.

(Case No. 03-1819)

JA at 227.

Dawn Bukowski also testified as to why she did not question the Clyde Fisher-Mary Fisher scheme in the following passage:

Q       During this time frame, how many people with the last name of Fisher were working at Labadie?

A       No one else.

Q       Other than?

A       Mary or -- or Clyde.

Q       And who did the hiring and firing at this time?

A       Dave Bennett did the hiring.

Q       Did he sometimes do the firing?

A       Yes.

Q       Did you see him do that on occasion?

A       Yes.

Q       If you knew that Clyde Fisher was working there and the paperwork and paychecks were in Mary Fisher's name, did that cause you some concern?

A       Yes.

Q       What did you do about that?

A       Nothing.

Q       Why?

A       Because I was -- I only did what I was told to do.

Q       Who was it that told you to do it that way?

A       Mr. Bennett.

(Case No. 03-1819)

Q    Did you feel you could question Mr. Bennett on that?

A    No.

Q    Did you fear consequences if you tried?

A    Yes.

Q    What did you fear might be a consequence?

A    You could get fired.

Q    Did you ever actually meet Mary Fisher?

A    Yes.

Q    What were the circumstances of that?

A    I don't remember the very first time I met her, but it could have been at, like, a function, a company picnic, Christmas party.

Q    In a job related social event?

A    Yes.

Q    So you knew there was a separate person named Mary Fisher?

A    Yes.

Q    Would Mr. Bennett attend those functions?

A    Yes.

JA at 237-38.

The government introduced voluminous exhibits demonstrating that during the time period in question, Clyde Fisher continued to receive DIB exceeding Ninety Thousand Dollars, as well as numerous copies of paychecks to Mary Fisher signed by David Bennett, and the payroll forms maintained by Labadie to pay Mary Fisher, including the relevant W-2 Forms.

The government also presented the testimony of Jean Toth, a 40-year employee of Labadie and the mother of Dawn Bukowski. Her testimony confirmed that the substitution of Mary Fisher's name for that of Clyde Fisher as an employee was known by other persons in a supervisory capacity at Labadie. *See* JA at 260, lines 1-13; JA at 262, line 15 and JA at 263, line 14.

### III. A Review of the Applicable Law.

As indicated, a district court ruling setting aside a jury verdict based on insufficient evidence begins with *Jackson v. Virginia*, *supra*. In that context, a trial judge in considering a Rule 29 motion may neither weigh conflicting evidence nor consider the credibility of witnesses and to do otherwise would allow the judge to invade the province of the jury as the sole finder of fact in a jury trial. *United States v. Adamo*, 742 F.2d 927, 935 (6th Cir. 1984), *cert. denied sub nom*, *Freeman v. United States*, 469 U.S. 1193 (1985). Moreover, "[a] defendant claiming 'insufficiency of evidence bears a very heavy burden.'" *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986).

### IV. A Summary Review of the District Court's Ruling.

The district court published an 18-page opinion granting the Rule 29 motion for an acquittal. We cite several passages from the opinion which demonstrate that the district court engaged in a credibility exercise in concluding that the evidence was insufficient to support Bennett's conviction on Count 2.

First, the district court elected to summarize the testimony of the defendant as having some impact in his decision. Specifically, the district court related as follows:

> David Bennett testified that he joined Labadie Oldsmobile in 1989. D. Bennett Tr. at 4-5. Bennett stated that although he had the authority to hire and fire most people, Gary Labadie had made clear that certain "sacred cows" were to be left alone, such as Dawn Bukowski, Jean Toth, and Walter Wittkopp. Id. at 8-9. Bob Mazzara also came to be known as another employee who was beyond Bennett's

authority. Id. at 9-10. Bennett identified Defense Exhibit 1 as a payroll notice form, stated that it was a required part of adding employees to the payroll, and stated that either he or a department head would have had the authority to fill out the form and have an employee added to the payroll. Id. at 12-13. Bennett testified that although he had become aware of Clyde Fisher's "arrangement" through Gary Labadie, he initially overlooked it because Clyde Fisher was scheduled to be returned to his original porter status due to health problems, and his income would then have been reported on a 1099 form. Id. at 14. Bennett also noted that Clyde Fisher's arrangement appeared to have the blessing of Gary Labadie, which suggested to Bennett that he should not interfere. Id. at 26-27. Bennett denied ever telling Dawn Bukowski to add either Clyde or Mary Fisher to the Labadie Oldsmobile payroll, and also stated that he and Walter Wittkopp had never discussed the Fishers. Id. at 15. He also denied ever knowing that Clyde Fisher was receiving Social Security disability benefits, and stated that he signed Mary Fisher's 401(k) documents in his separate capacity as trustee for the plan. Id. at 15-16.

JA at 24-25.

Secondly, we disagree with the district court's assessment of Dawn Bukowski's testimony in the following passage from the district court's opinion:

> The problem for the government in this case is that the available evidence demonstrates Bennett's alleged involvement in this scheme to have been much more remote. There is no payroll slip for Mary Fisher and no document tying Bennett to Mary Fisher's addition to the payroll. Dawn Bukowski has no specific recollection of receiving any application or payroll materials for Mary Fisher. The government makes much of Bukowski's claim early in her testimony that the defendant was the one who gave Mary Fisher's materials to her, but cross-examination revealed that this assertion, to the extent it suggested a specific recollection of the event, had no basis in fact. At best, Bukowski stated that the materials must have come from Bennett because all such paperwork generally passed through him first. That alone, however, is not the sort of substantial evidence from which a jury could infer that Bennett caused the false statement or representations of Mary Fisher to be transmitted to the Social Security Administration. *See Martin*, 375 F.2d at 957.

JA at 33 (emphasis added).

The cross-examination of Dawn Bukowski to which the district court made reference follows:

Q       All right. Now I understood you to testify on direct examination that --

correct me if I'm wrong -- but I understood you to say to begin with that you received government's exhibit 20,[4] the application for employment in the name of Mary Fisher, you received it?

A      What do you mean I received it?  I guess I don't understand.

Q      Well did you obtain the application for employment from somewhere?

A      Yes.

Q      Where?

A      I would have had to have gotten it from Mr. Bennett.

Q      When?

A      At the time the person was hired or filled out the application.

Q      Which was?

A      It would have been in 1993 after the person filled out the paper.

Q      Well do you remember?  Do you have a specific independent recollection of receiving this application?

A      This specific paper?

Q      That's right.

A      Do I remember this specific paper?

Q      Exactly.

A      I guess -- I have so many, I guess -- no, I don't remember this specific one.

---

[4] Government Exhibit 20 is a printed application for employment to work at Labadie and it set forth Mary Fisher as the name of the applicant for employment and was dated 4-26-93.  The application also contained the Social Security Number 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 and listed the date of birth as 11-16-42.  The application also indicated that the employment desired was for cleaning and that the applicant could start at any time.  The application also included the question "are you employed now" and the answer was "no."

Q       All right.  I'll ask you the same question regarding government exhibit 22.[5]

A       I guess you're asking me to exactly remember when I got the paper?

Q       When and where, under what circumstances, where you were; do you remember where you were?

A       Not the exact place I was, no.

Q       How about 23[6] dated April 3, 1997; almost four years later; do you remember that?

A       No.

Q       Exhibit 24,[7] we're back to April of '93 again, I'll ask you if you have a specific recollection of receiving that?

A       No.

Q       Government's exhibit 25,[8] we're into January 1995, I'll ask you if you remember that.

A       No.

---

[5]  Government's Exhibit 22 was a completed Form W-4 entitled "Employee's Withholding Allowance Certificate" and was signed by Mary E. Fisher on April 26, 1993 and using the Social Security Number of 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.  See JA 119.

[6]  Government's Exhibit 23 is similar to Government's Exhibit 22.  It is also an "Employee's Withholding Allowance Certificate" and bears the signature of Mary E. Fisher on April 3, 1997 and using the Social Security Number of 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.  See JA 120.

[7]  Government's Exhibit 24 is entitled "Employment Eligibility Verification (Form 1-9)" and bears the signature of Mary E. Fisher on the date of April 26, 1993 and using the Social Security Number of 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.  See JA 121.

[8]  Government's Exhibit 25 is a form issued by the Penn Mutual Life Insurance Company and entitled "Diversifier II" and relates to the 401(k) Savings Plan for Labadie and contains the signature of Mary Fisher and D.E. Bennett.  See JA 122.

(Case No. 03-1819)

Q     Exhibit 26,[9] same question.

A     No.

Q     27?[10]

A     No.

Q     28?[11]  We're into February of '97.

A     No.

Q     29,[12] February of '96?

A     No.

Q     And this attendance record, we don't know when that was generated, right?

A     No.

Q     You don't know where it came from?

A     I know it was generated, but it doesn't have the year on it.

---

[9] Government's Exhibit 26 is entitled "Labadie Olds-Cadillac-GMC 401(k) Savings Plan Compensation Reduction Agreement" and lists the employee as Mary E. Fisher and contains the signature of Mary E. Fisher and D.E. Bennett with the date of 1-5-95.  See JA 123.

[10] Government's Exhibit 27 is the "Beneficiary Designation" for the employer Labadie with Mary E. Fisher as the participating employee and listing Clyde L. Fisher as the primary beneficiary and identifying Clyde Fisher as the spouse of the participating employee.  The form was signed by Mary E. Fisher on 1-5-95 and her signature was witnessed by David Zorn.  The signature of the defendant David Bennett does not appear on Government's Exhibit 27.  See JA 124.

[11] Government's Exhibit 28 is entitled "Employee's Michigan Withholding Exemption Certificate State of Michigan - Department of Treasury" and is signed by Mary E. Fisher using the same Social Security Number and date of birth as used previously.  The defendant David Bennett's signature does not appear on the exhibit.  See JA 125.

[12] Government's Exhibit 29 is a Labadie document requiring all employees to provide in the case of emergency the person to notify.  Mary Fisher is listed the employee and the person to notify in the case of an emergency is listed as Clyde Fisher.  No signatures appear on the form. See JA 126.

(Case No. 03-1819)

Q    So there's no way you could tell when or under what circumstances you got this?

A    I created it. I mean I didn't get this from anyone.

JA at 243-45 (all footnotes added).

On redirect, the following clarifying testimony from Dawn Bukowski was developed:

Q    I would like you to look back at exhibits 20, 22, 23 and 24. Do you have those?

A    Yes.

Q    And you have indicated on cross examination you didn't remember all the exact circumstances under which you received those documents, is that correct?

A    That's correct.

Q    Are you confident that you received those documents from Mr. Bennett?

A    I work directly for him and I would have had to have sent them off, but do I remember exactly? No.

Q    That's a different question. Are you confident you would have received them from Mr. Bennett?

A    Yes.

Q    Because you worked directly for him?

A    Yes.

Q    These are the kind of documents he would give you?

A    Yes.

Q    He's the one who told you to put Mary Fisher on the payroll?

A    (Pausing)

Q    Let me ask you in a different way. Was it your job to set up the payroll?

A      Yes.

Q      For the person?

A      Yes.

Q      And Mr. Bennett was the person who would have you set up payroll for various people.

A      Yes.

Q      You said on cross examination everything had to run by his desk.

A      Yes.

Q      In order to get to you?

A      Yes.

JA at 254-55.

We disagree with the district court's assessment of Dawn Butkowski's testimony. Clearly, a jury would have been justified in reasonably concluding that her testimony supported Clyde Fisher's testimony that Bennett orchestrated and implemented the plan to permit Clyde Fisher to draw DIB and still draw wages from Labadie by substituting his wife as the apparent wage earner.[13]

**V.  Conclusion.**

We find the court erred in granting Bennett's Rule 29 motion. This case is remanded to the

---

[13]  The district court also contended that because the government had not charged David Bennett in Count 2 as aiding and abetting the presentation of false and material information to the Social Security Administration, the proof offered by the government failed on sufficiency grounds. We reject the district court's belief that the failure to charge David Bennett as an aider and abettor under 18 U.S.C. § 2 comprised the government's case. Rather, we find that the evidence presented by the government was sufficient under the required *Jackson v. Virginia* standard for a rational jury to find that the Defendant-Appellee David Bennett knowingly caused to be made false statements to the Social Security Administration.

district court to reinstate the jury's guilty verdict and for sentencing.