NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0046n.06

No. 13-3237

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jan 21, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| ROBERT F. STARNES, JR., | ) | DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:    SUHRHEINRICH, GRIFFIN and KETHLEDGE, Circuit Judges.

**PER CURIAM.**  This is a criminal case concerning a conviction and sentence for bank robbery and armed bank robbery.  Plaintiff-Appellee United States of America (the "Government") indicted Defendant-Appellant Robert F. Starnes, Jr. ("Starnes") with one count of bank robbery and two counts of armed bank robbery.  After a jury trial, Starnes was convicted of all three counts and sentenced by the district court to a term of 180 months' imprisonment. Starnes claims that the jury deliberated prematurely, that the evidence was insufficient, and that his sentence was procedurally unreasonable.  We AFFIRM the district court judgment and sentence.

I.    BACKGROUND

In June and July of 2010, Starnes allegedly robbed three Ohio banks.  During each incident, Starnes handed tellers a demand note, and in two incidents he threatened to use a

1

firearm. Specifically, Starnes allegedly robbed the Lorain National Bank of $4,616.00 on June 28, 2010, First Merit Bank of $4653.00 on July 14, 2010, and Chase Bank of $1,845.00 on July 21, 2010.

A federal grand jury in the Northern District of Ohio returned an Indictment charging Starnes with armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d). The Indictment was superseded, charging instead two counts of armed bank robbery and one count of bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d).

After his first jury trial in fall 2010, Starnes was convicted on all three counts. The district court sentenced Starnes to 180 months imprisonment, followed by five years of supervised release, and ordered to pay restitution in the amount of $11,114.00 and a special assessment of $300.00. Starnes appealed, and after hearing oral argument, this Court reversed the district court's denial of Starnes' motion to suppress finding that the Government relied on evidence that it had impermissibly seized. See *United States v. Starnes*, 501 F. App'x 370 (6th Cir. 2012). In turn, we vacated his conviction, remanding to the district court for further proceedings. *Id.*

Starnes was retried by jury in November 2012 before a different district judge. The Government again presented witnesses and evidence of the three bank robberies found in the superseding indictment.

The Government presented bank surveillance video and photographs from the June 28, 2010 robbery of Lorain National Bank. The video depicted a man entering Lorain National Bank, placing a note on the counter, receiving money, and exiting. Teller Dana Woolford testified, describing how the robber approached her, placed a demand note on the counter, and showed her a gun in his front waistband. Woolford identified the demand note used during the

2

robbery, which stated, "This is a robbery. No dye packs." R. 127 at 1928, 1935. Woolford described and made an in-court identification of Starnes as the person who robbed her, and testified to her prior identification of Starnes from a photo array near the time of the robbery.

The Government also presented a bank surveillance video and photographs from the July 14, 2010 robbery of First Merit Bank. Teller Jennifer Marie Smith testified that a man approached her, placed a demand note on the counter, and tapped at his waist. Smith identified the demand note used during the robbery, which stated, "This is a robbery. Stay calm. No dye packs." *Id*. at 1986. Smith described and made an in-court identification of Starnes as the person who robbed her, and testified to her prior identification of Starnes from a photo array. Assistant branch manager Iris Cabanas also testified, identified Starnes in court, and picked him from a photo array.

The Government likewise presented bank surveillance video and photographs from the July 21, 2010 robbery of Chase Bank. Teller Lula Jones testified that a man approached her, handed her a note, and displayed a gun. Jones identified the demand note used during the robbery, which stated, "This is a robbery, no dye packs. Stay calm and normal." *Id*. at 2087. Jones could not provide an in-court identification of Starnes. Nonetheless, branch manager Peggy Kelly identified Starnes in court.

Finally, the Government presented evidence that placed Starnes' cell phone near the three banks before and after the robberies. Special Agent Kevin Horan testified as an expert witness in the area of cell phone record analysis. Horan testified that he reviewed historical call detail records of Starnes' cell phone and relevant cell tower data, and discussed his bank robbery analysis. Horan attested that Starnes' cell phone communicated with cell towers in the vicinity of the banks near the time each was robbed.

Throughout the trial, on at least ten occasions, the district court instructed the jury not to discuss the case. At the close of the Government's case, Starnes moved for acquittal under Federal Rule of Criminal Procedure 29. The district court denied that motion. During the conference at which the Government's exhibits were admitted, the Rule 29 motion was made and denied, and jury instructions were discussed, and the jury tendered a note to the court deputy. The court reviewed the questions on the record and docketed the note. Having observed differences in handwriting between sets of questions and captions attributing specific questions to either Juror No. 6 or Juror No. 14, the court noted that the questions appeared to be written by at least two jurors. Specifically, the note asked:

#6 -

1. Does Defendant have an alibi to where he was during those times on those dates of robbery?
2. Was the Defendant given a lie detector test?
3. Has the Defendant been in trouble with the law in the past?
4. Was the Defendant having financial issues at those particular times the robberies took place?

#14    Will the Defendant testify?

#6 again

1. Explain how Defendant and person in photos at bank can have same scar on same side of face if they are not the same person supposedly.

#14

Was there a handwriting analysis done to compare Defendant's to the demand notes?

Doc. 91-1. The district court offered to voir dire the jurors who wrote the note, but Starnes and the Government declined. Instead, following the suggestion made by both parties, the district court issued a curative instruction to the jury: the jury must not deliberate until it had received the court's instructions on the law and had heard both sides' closing arguments. The defense

4

rested without calling any witnesses and renewed its Rule 29 motion. After jury instructions and final arguments, the jury found Starnes guilty of all three counts listed in the Superseding Indictment.

During a sentencing hearing, the district court calculated Starnes' final offense level to be 28 with a Criminal History Category V. The district court sentenced Starnes to 140 months imprisonment, followed by five years of supervised release, and ordered him to pay restitution in the amount of $11,114.00, and a special assessment of $300.00.

## II. JURISDICTION

The lower court had jurisdiction under 18 U.S.C. § 3231, which provides the district courts with original jurisdiction over all offenses against the laws of the United States. This Court has jurisdiction to review the final disposition of a district court case under 28 U.S.C. § 1291, and has jurisdiction to review a criminal sentence under 18 U.S.C. 3742(a).

## III. ANALYSIS

### a. Premature Jury Deliberations

Starnes argues that the district court erred in its handling of the note received from jurors. He contends that the note indicated premature deliberations, which constitute structural error and mandate reversal. We find that the district court did not commit plain error.

Upon receipt of the note, the district court asked Starnes if he wanted the court to voir dire the jury, but Starnes affirmatively declined. Further, it was Starnes who suggested that issuing a curative instruction would "remedy" the situation. R. 128 at 2218-19. Starnes neither objected to the court's handling of the juror note at trial, nor did he move for a mistrial. Where an alleged error is not timely raised, we may only review it for plain error. *United States v. Olano*, 507 U.S. 725, 732 (1993).

5

The note and questions asked therein do not actually indicate any pre-deliberation discussions. Our decision in *United States v. Wooten*, 39 F. App'x 83, 90 (6th Cir. 2002) is instructive. *Wooten* involved allegations of premature jury deliberations, where several jurors submitted questions to the judge during a trial for offenses related to selling stolen airbags. The juror questions involved requests for "a copy of the defendants' signatures and for the identity of the person who wrote the checks," asked what the FBI agent was holding in his hand while testifying, and some used the plural pronoun "we." *Wooten*, 39 F. App'x at 90. The defense counsel requested a special instruction or warning against premature deliberations, but the district judge denied that request. This Court held that the district court did not err by denying the request because "the questions asked [did] not actually indicate any pre-deliberation discussions." *Id*. While the questions "*might* be the product of discussions among jurors . . . there [was] no particular reason to believe that they [were]" and only suggested that individual jurors were wondering about particular evidence. *Id*. (emphasis in original). Further, using the collective pronoun did not necessarily imply discussion among jurors. *Id*.

Here, there is a similarly strong basis to conclude that the juror questions were not the product of premature deliberations. First, the character of the note on which the juror questions were written indicates that the questions came from two separate jurors acting independently. The note features headings attributing specific questions to either juror number six or juror number fourteen, and provides clear delineations between them. Further, the questions attributed to juror number six and those attributed to juror number fourteen feature different handwriting.

Further, when a court instructs a jury to do something, there is a strong presumption that the jury will follow that instruction. *See Richardson v. Marsh*, 481 U.S. 200, 206 (1987) ("This accords with the almost invariable assumption of the law that jurors follow their instructions,

6

which we have applied in many varying contexts.") (citations omitted). The district court instructed the jury not to discuss the case at least ten times before receiving the juror questions. R. 127.

Because the record does not suggest premature deliberation occurred, and there is a presumption jurors followed the court's instruction to avoid premature deliberation, the district court did not commit plain error in its handling of the jury note.

### b. Rule 29 and Sufficiency of Evidence

Starnes further argues that the district court erred in denying his Rule 29 motions for judgment of acquittal because there was insufficient evidence to convict him of armed and unarmed bank robbery. We find sufficient evidence to support his conviction, and thus no error in denying the Rule 29 motions.

We review de novo the district court's denial of a motion for judgment of acquittal. *United States v. Kuehne*, 547 F.3d 667, 677 (6th Cir. 2008) (citing *United States v. Zidell*, 323 F.3d 412, 420–21 (6th Cir. 2003)). This includes deciding "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We may not "weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010) (citations omitted).

Defendants asserting such claims "bear[] a very heavy burden," *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986) (internal quotation marks and citations omitted), and an appellate court will only set aside the judgment if, after viewing the record as a whole, it

determines "the judgment is not supported by substantial and competent evidence." *United States v. Blakeney*, 942 F.2d 1001, 1010 (6th Cir. 1991).

We conclude that the Government presented sufficient evidence to support the jury's verdict as to all counts. At trial, the Government presented video surveillance and still frame photographs captured from the June 28, July 14, and July 21 bank robberies. For each of the three robberies, the Government presented multiple camera angles of bank surveillance video and photographs, allowing jurors to compare the images of the robber with Starnes sitting in the court room. The Government also presented eyewitness testimony from tellers and branch managers at each of the banks. Lorain National Bank teller Woolford, First Merit Bank teller Smith, and First Merit Bank assistant branch manager Cabanas made in-court identifications of Starnes and testified to prior identifications from photo arrays.[1] Although Chase teller Jones could not provide an in-court identification of Starnes, Chase branch manager Kelly did. Finally, Special Agent Horan testified after analyzing call detail records, presenting evidence that placed Starnes' cell phone near the victim banks at the time of the robberies.

In light of our standard of review, affording the Government the benefit of all inferences that may reasonably be drawn from the evidence and resolving credibility issues in favor of the jury's guilty verdict, the Government presented sufficient evidence to support Starnes' conviction in the form of surveillance footage and photos, eyewitness testimony, and cell phone expert testimony. As such, the district court did not err in denying Starnes' Rule 29 motion.

---

[1] Starnes argues for the first time on appeal that a Special Agent's presence during the photo array identifications "impermissibly tainted the validity of the identifications." Appellant's Br. at 20. But, there is no evidence in the record to suggest that the arrays were impermissibly suggestive, and there is no authority that non-blind photo arrays are per se impermissibly suggestive. *See United States v. Watson*, 12-4012, 2013 WL 5508874 at *3 (6th Cir. Oct. 4, 2013) (finding that non-blind lineups are not inherently suggestive).

### c. Sentencing

Starnes argues that the district court's sentence is procedurally unreasonable because it improperly added two points to his criminal history score.

First, Starnes contends that the district court improperly assessed one criminal history point for breaking and entering and aggravated burglary convictions arising from case 93CR43854. He argues that the additional point was unwarranted because that sentence was imposed on the same day as his breaking and entering and aggravated burglary convictions arising from case 93CR44043, and there was no intervening arrest. We find no error.

"[A] district court's findings of fact for the purpose of calculating a sentencing range under the Guidelines are reviewed under the clear-error standard." *United States v. Kennedy*, 714 F.3d 951, 957 (6th Cir. 2013) (citing *United States v. Hamilton*, 263 F.3d 645, 651 (6th Cir. 2001)). But "whether those facts as determined by the district court warrant the application of a particular guideline provision is purely a legal question and is reviewed de novo by this court." *Id.* (citing *United States v. Triana*, 468 F.3d 308, 321 (6th Cir. 2006)).

Following a May 23, 1993 arrest, Starnes was convicted of three counts of breaking and entering, and four counts of aggravated burglary in the Lorain County Court of Common Pleas. Case Number 93CR43854; PSIR. The convictions arose from multiple violations occurring on May 11, May 13, April 26, May 23, May 17, May 20, May 18, and again on May 23, 1993. On October 8, 1993, the Lorain County Court of Common Pleas sentenced Starnes to eighteen months custody on each count of breaking and entering, and five to twenty-five years custody on the aggravated burglary counts. Both counts were to be served concurrently to the sentence imposed in 93CR44043, discussed below.

Following an August 5, 1993 arrest, Starnes was convicted of two counts of breaking and entering, and two counts of aggravated burglary in the Lorain County Court of Common Pleas. Case Number 93CR44043; PSIR. The convictions arose from multiple violations charged as occurring on November 19, 1992, May 17, 1993, March 16, 1992, June 20, 1993, May 21, 1993, and May 23, 1993. On October 8, 1993, the same day Starnes was sentenced in case 93CR43854, the Lorain County Court of Common Pleas sentenced him to eighteen months custody on the breaking and entering counts, and five to twenty-five years on the aggravated burglary counts.

The district court assessed an additional criminal history point under U.S.S.G. § 4A1.1(e)[2] because Starnes' convictions in 93CR44043 were treated as a single sentence that received no points, and both breaking and entering and aggravated burglary are crimes of violence.

> Sentencing Guideline section 4A1.2(a)(2) provides:
>
> If the defendant has multiple prior sentences, determine whether those sentences are counted separately or as a single sentence. Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Count any prior sentence covered by (A) or (B) as a single sentence. *See also* § 4A1.1(e).

U.S.S.G. § 4A1.2 (emphasis added). Under this provision, an intervening arrest is only relevant to determining whether the relevant sentences are single or separate.

---

[2] (e) Add 1 point for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under (a), (b), or (c) above because such sentence was counted as a single sentence, up to a total of 3 points for this subsection. U.S.S.G. § 4A1.1.

Here, the district court found that there was no intervening arrest, and found the sentences imposed to be a single sentence under U.S.S.G. § 4A1.2(a)(2)(b). R. 126 at 1840-41, 1546-48. Thereafter, the analysis shifted to whether aggravated robbery or breaking and entering was a crime of violence. Section 4A1.2 refers the court to U.S.S.G. § 4A1.1(e), providing that it should add 1 point for each prior sentence, up to 3, resulting from a "crime of violence" that did not receive any points because it was counted as a single sentence. At least one of Starnes' 93CR44043 convictions qualifies as a "crime of violence": aggravated burglary. § 4B1.2(a).[3] Thus, the district court properly assessed one additional point to Starnes' criminal history calculation for this sentence.

Starnes next contends that the district court erred in imposing one additional criminal history point for a ten-day sentence he received for obstructing official business because the sentence did not exceed thirty days. We find no error.

Following misdemeanor convictions for obstructing official business and possession of drug abuse paraphernalia, the Oberlin Municipal Court sentenced Starnes to ten days incarceration and a $100 fine, respectively. Despite Starnes' assertion, the record reflects that the district court imposed the additional criminal history point for Starnes' possession of drug paraphernalia under U.S.S.G. § 4A1.1(c),[4] and not for his obstructing official business

---

[3] (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
   (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
   (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another. U.S.S.G. § 4B1.2.
[4] (c) Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this subsection. U.S.S.G. § 4A1.1.

conviction. The district court properly found that the possession of drug abuse paraphernalia is a scorable misdemeanor, and accurately assessed one criminal history point for Starnes' sentence.

## IV. Conclusion

The judgment of the district court is affirmed in all respects.